[Civ. No. 3323. First Appellate District, Division One.—June 12, 1920.]

## HENRY POTTER, Appellant, v. CHARLES HENRY SMITH et al., Respondents.

[1] HUSBAND AND WIFE — OWNERSHIP OF IMPROVEMENTS.—Improvements made by the husband on property owned by the wife belong to the wife, notwithstanding such improvements are paid for with community funds.

[2] ID.—CONVEYANCE BY HUSBAND TO WIFE — SEPARATE PROPERTY — PRESUMPTION.—A husband may convey real or personal property to his wife, and whether the property conveyed be his separate or the community property, the presumption is that it thereby becomes, and is thereafter treated as, her separate property; and in in the absence of evidence of a contrary intent the transfer will vest the property in the wife as her separate property and estate.

[3] ID.—CHARACTER OF OWNERSHIP—MODE OF ACQUISITION—DECLARATIONS OF PARTIES—PRESUMPTION—EVIDENCE—FINDING.—The character of the ownership of property, whether separate or community, is to be determined by the proof showing the mode of acquisition, rather than by any declarations of one of the parties that the property was or was not community property; and when the controversy is between the husband and the legal representative of the wife the presumption may be controverted by other evidence, direct or indirect, and it is only where it is not so controverted that the court is bound to find in accordance with the presumption.

[4] ID.—REBUTTAL OF PRESUMPTION — CONCLUSION OF TRIAL COURT — APPEAL.—Whether or not the presumption that property conveyed by one spouse to the other is the separate property of the latter is controverted or sustained is a question of fact for the trial court, and the conclusions of that tribunal are conclusive upon an appellate court, unless it be manifestly without sufficient support in the evidence.

[5] ID.—PRESUMPTION AS EVIDENCE—WEIGHT OF REBUTTAL EVIDENCE—BURDEN OF PROOF.—In an action by a husband against the devisees under the will of his deceased wife to have it determined that certain real property standing of record in the name of the deceased was community property, and upon her death vested absolutely in him, the property having been purchased with money and the proceeds of certain notes transferred by the plaintiff to his wife, the presumption that the property was her separate property, though disputable, is itself evidence, and it is for the trial court to say whether the evidence offered to support or overthrow the presumption has sufficient weight to effect that purpose, the burden being on the plaintiff to rebut the presumption.

[6] ID.—TRANSFER OF MONEY AND NOTES TO WIFE—GIFT—SUBSEQUENT PURCHASE OF LOTS—CHARACTER OF OWNERSHIP—EVIDENCE—FINDING.—In this action by a husband against the devisees under the will of his deceased wife to have it determined that certain real property standing of record in the name of the deceased, and which had been purchased with money and the proceeds of certain notes transferred by the plaintiff to his wife, was community property, from all the circumstances the trial court may well have concluded, as it did, that the transfer of the money and notes in the first instance was a gift from the plaintiff to his wife, and that the subsequent purchase of the lots in question from that fund was a further consummation of a like intent, notwithstanding the testimony of the plaintiff that there was no intent or purpose on his part to give any of the money or any of the notes to his wife to be hers absolutely.

[7] ID.—CHARACTER OF OWNERSHIP—DECLARATION BY WIFE IN WILL—INCOMPETENT EVIDENCE.—In such an action, the declaration of the deceased wife in her will that the property in question was her sole and separate property is not competent proof of such fact and should not be admitted over plaintiff's objection.

[8] ID.—ADMISSION OF WILL—RESERVE OF MOTION TO STRIKE OUT—APPEAL—PRESUMPTION.—Where the trial court in such action admits the will of the deceased containing the declaration by her that the property in question was her sole and separate property, but at the time of doing so expresses the opinion that such declaration is not competent to prove that fact, and, in admitting the document, ·reserves to itself the right to strike it out without motion if it sees fit, it will be assumed on appeal, in the absence of some showing to the contrary, that the trial court did strike out such evidence and disregarded the same in arriving at its judgment.

[9] ID.—LETTERS TO WIFE — RES GESTAE — INCOMPETENT EVIDENCE.— In such an action, letters written by the plaintiff to his wife, and offered by him as tending to show a friendly relation between them, are properly excluded, where they form no part of the *res gestae* and are in no way connected with the circumstances surrounding the transactions involved in the action.

[10] NEW TRIALS—GRANTING OR REFUSAL—DISCRETION OF TRIAL COURT —APPEAL.—The granting or refusing a new trial rests so largely in the discretion of the trial court that its action in that regard will not be disturbed except upon the disclosure of a manifest and unmistakable abuse.

APPEAL from a judgment of the Superior Court of Humboldt County. George D. Murray, Judge. Affirmed.

The facts are stated in the opinion of the court.

Pierce H. Ryan for Appellant.

W. F. Clyborne, J. H. G. Weaver and Puter & Quinn for Respondents.

WASTE, P. J.—This is an action to quiet title. The plaintiff contends that the land, consisting of two lots with a dwelling-house thereon, situated in the city of Eureka, the title to which stood of record in the name of his deceased wife, Martha R. Potter, was community property and upon her death vested absolutely in him. The defendants claim under the will of the deceased wife. Judgment was entered for the defendants, from which the plaintiff appeals.

Prior to the acquisition of the lots in question, the plaintiff had entrusted the accumulation of his earnings to his wife, and had assigned, indorsed, and delivered to her two notes representing other portions of his earnings, and his wife's savings. The lot was paid for out of this fund. The lower court found that the consideration paid for the land was the separate property of the wife, and that from the date of the conveyance in 1885, the land was her separate property. The sufficiency of these findings presents the serious question on this appeal. A solution of the controversy depends largely upon the nature of the transaction between the plaintiff and his wife, by which, so the respondents contend, all the prior earnings of the plaintiff, including two promissory notes, became the separate property of the wife.

Plaintiff and his wife were married in Michigan in 1872. Neither of them at that time had any property. They came to Humboldt County to reside five years later. They had then accumulated some four or five hundred dollars and owned a house in Michigan. The plaintiff opened a merchant tailoring establishment in Eureka and, having no bad or expensive habits, was soon in possession of a lucrative business. According to the testimony of the plaintiff, he gave his wife all his earnings from the time they were married. They occasionally loaned money on notes in the name of plaintiff, but the wife kept the notes in her possession. Plaintiff later began drinking and gambling. What then occurred is best told in his own words: "When I was about

forty years old I acquired the habit of gambling to some
extent; that was about 1885 or 1886, along there I should
judge; *it was before the property was bought from Pratt.*
The deed is deeded in 1885 and my wife and I picked out
the lot. At one time I had some money loaned out on notes,
I couldn't say the exact amount, but to my best knowledge
it amounted to something as near as I can remember be-
tween $1,500 and $1,600 approximately. I do not remember
whose notes they were, one was Dunlap who had a ranch on
Eel River Island. I gave those notes, I assigned them over,
or had them assigned over to my wife because she requested
me to do so. She said one morning to me,—I had been upon
a spree,—and she said, 'Henry, better put what you have in
my name as I save it for you,' and I hesitated a few
moments and I said, 'I will let you know at noon.' She
said, 'No, don't wait till noon; do it right now,' and I said,
'All right.' She also had a paper and put here how much I
had. I don't know what I had. I said, 'Go to Ernest
Sevier; he did my little work, and have them assigned over
to you,' and I guess she did. I never asked her whether she
had done it or whether she had not. I never asked her,
but I gave her this with that understanding to save it for
us for our old days, so that if anything happened there
would be something left.''

Some time after the transfer of the property by plaintiff to
his wife was effected, the lots in question were purchased,
that ''they might have a home and avoid paying rent.'' The
plaintiff seems to have had but little to do with the transac-
tion, his wife attending to the details. The purchase price
of $600 was paid out of the money in the wife's possession.
Some time later the plaintiff and his wife purchased a block
of land, paying $1,550 for it, out of the same fund. This
land was sold a few months later for $3,300, and the money
was used in the erection of a house, costing that sum, on the
lots which had been purchased for the home. It thus ap-
pears without contradiction that the premises, which are the
basis of this action, were purchased and improved with funds
turned over by the plaintiff to his wife, in the manner indi-
cated, and the accumulation thereof. It was furnished in

the same manner. The plaintiff testified that he spent some $480 in the doing of some additional work on the place which "did not pass through his wife's hands." [1] Assuming that this last amount was community property, the owner of the lots was the owner of the house, and the improvements made with that money belonged to the spouse owning the property. (*Shaw* v. *Bernal,* 163 Cal. 262, 267, [124 Pac. 1012].)

The plaintiff's expenditure of that sum of money does not enter into the consideration of the case.

According to the plaintiff, there was never any friction between his wife and him, she exercising "a great deal of patience" with him during his lapses from the straight and narrow path of sobriety. They lived together on the premises in question for nearly twenty years, during the latter ten years of which period plaintiff's business "ran down pretty bad." During the entire period all his earnings, other than what he spent in his business, or for himself, he gave to his wife. In 1903, in order to get away from the old influences which lured him into evil ways and spendthrift habits, plaintiff left Eureka and went to the state of Idaho, where he established a business and acquired a home. When he went away he took $2,500, which, he testified, he realized from the sale of a timber claim. He does not appear to have ever solicited his wife to join him there, for she told him she preferred to remain in California. He visited her but once during the fifteen years, remaining for about two weeks. He never sent her any money during that time and appears to have once written to her for financial assistance.

For the purpose of tending to offset plaintiff's contentions in this action, it was shown by various witnesses that subsequent to the death of the wife, and after plaintiff's return to California, he made declarations and admissions, the effect of which, respondents claim, was to destroy his present claim. When he was informed by the witness Rotermund that his wife had willed the property to the defendants, he remarked "that he was sorry that he gave the property to her, that it was his hard-earned money that bought it; that

if Mrs. Potter had left him part of it he would have been satisfied.'' The same witness testified that during the trial the plaintiff had stated to him: "I have given this to Mrs. Potter and it was my hard-earned money.'' In two conversations with the defendants, plaintiff said "the property belonged to Mrs. Potter [his wife]. . . . It is my own hard earnings that bought this property. I gave it to her, but it is mine now.''

On these facts the respondents defend the conclusions and judgment of the lower court upon the theory, as stated by them, "that when the plaintiff delivered the money and notes to the wife and gave the possession of them to her, and in addition transferred and conveyed the same from his name to hers, the presumption immediately arose that said money and notes thereupon became and were thereafter to be treated as her separate property. This is the presumption,'' they contend, "that applied to the consideration for the lots. Unless the presumption was overcome, the court was justified in finding that the consideration paid for the property was the separate property of the wife and that the lots were her separate property. The controversy on this phase of the case then resolves itself,'' they say, "into a question of what the intention of the plaintiff was when he transferred the money and notes from himself to his wife.''

[2] Prior to the adoption of the amendment of 1889 (Stats. 1889, p. 328) to section 164 of the Civil Code, the *prima facie* presumption was that property conveyed to either husband or wife, after their marriage, was community property. (*Nilson* v. *Sarment,* 153 Cal. 524, 527, [126 Am. St. Rep. 91, 96 Pac. 315], and cases cited.) But it has never been held that such a presumption arises in case of a conveyance by one of the spouses to the other. (*Estate of Klumpke,* 167 Cal. 415, 423, [139 Pac. 1062].) A husband may convey real or personal property to his wife, and whether the property conveyed be his separate or the community property, the presumption is that it thereby becomes, and is thereafter treated as, her separate property. (*Carter* v. *McQuade,* 83 Cal. 274, 278, [23 Pac. 348].) The presumption of community property cannot apply where the transaction was in effect a gift from the husband to the wife. In the absence of evidence of a contrary intent the transfer will

vest the property in the wife as her separate property and estate. (*Hamilton* v. *Hubbard*, 134 Cal. 603, 606, [65 Pac. 321, 66 Pac. 860].)

[3] The supreme court has on several occasions expressed the view that the character of the ownership of property, whether separate or community, is to be determined by the proof showing the mode of acquisition, rather than by any declarations of one of the parties that the property was or was not community property. (*Bias* v. *Reed*, 169 Cal. 33, 42, [145 Pac. 516]; *Hammond* v. *McCollough*, 159 Cal. 639, 649, [115 Pac. 216]; *Estate of Granniss*, 142 Cal. 1, 4, [75 Pac. 324].) The court will decide the question of the alleged donor's intention from his acts, declarations, and conduct at the time of the transaction. (*Killian* v. *Killian*, 10 Cal. App. 312, 319, [101 Pac. 806]; *Woods* v. *Whitney*, 42 Cal. 358.) When the controversy, under such circumstances, is between the husband and the legal representative of the wife, the presumption may be controverted by other evidence, direct or indirect, and it is only where it is not so controverted that the court is bound to find in accordance with the presumption.

[4] Whether or not it is so controverted or is sustained is a question of fact for the trial court, and the conclusions of that tribunal are conclusive upon an appellate court, unless it be manifestly without sufficient support in the evidence. (*Fanning* v. *Green*, 156 Cal. 279, 282, [104 Pac. 308].)

[5] The presumption, one way or the other, although disputable, is itself evidence, and it is for the trial court to say whether the evidence offered to support or overthrow the presumption has sufficient weight to effect that purpose. (*Gilmour* v. *North Pasadena Land etc. Co.*, 178 Cal. 6, [171 Pac. 1066]; *Pabst* v. *Shearer*, 172 Cal. 239, 242, [156 Pac. 466].) The burden was on the plaintiff to rebut the presumption; on the one hand, that he did not intend to make a gift to his wife of the money and notes transferred to her and from which the home was purchased and furnished, and to sustain, on the other hand, the presumption arising from the acquisition of the real property before the amendment to the code section, that it was community property. (*Alferitz* v. *Arrivillaga*, 143 Cal. 646, 648, [77 Pac. 657].) [6] From all the circumstances the trial court may well have concluded, as it did, that the transfer of the money and notes in the first instance was a gift from the plaintiff to his wife, and

that the subsequent purchase of the lots from that fund was a further consummation of a like intent. It requires no unreasonable or strained interpretation of the evidence to so hold. (*Auener* v. *Suiter,* 46 Cal. App. 301, [189 Pac. 120].) While the plaintiff testified that there was not intent or purpose on his part to give any of the money or any of the notes to his wife to be hers absolutely, this evidence, competent and admissible as bearing upon the intent of the plaintiff in the transaction, was not conclusive. (*Gilmour* v. *North Pasadena Land etc. Co., supra.*) The court was not bound to believe the plaintiff when he testified he did not have such intent. (*Fanning* v. *Green,* 156 Cal. 279, 285, [104 Pac. 308].)

[7] Defendants offered the will of Mrs. Potter, devising the property in question to defendants Smith. Plaintiff objected generally to its introduction and particularly to a portion of the will which stated, ''I hereby declare that all the property, both real and personal, of which I may die, constituted my sole and separate estate.'' The objection was overruled, *pro forma,* and the will admitted. When the evidence was all in plaintiff moved to strike out the portion of the will to which he had objected. The motion was submitted, but was never ruled upon, and the objectionable matter remains in the record. The declaration of the deceased wife in the will was not competent proof that the property in question was her separate property, and should not have been admitted. (*Rowe* v. *Hibernia Sav. & Loan Soc.,* 134 Cal. 403, 407, [66 Pac. 569]; *Estate of Granniss, supra; Estate of Learned,* 156 Cal. 309, 311, [104 Pac. 315]; *Crowley* v. *Savings Union Bank & Trust Co.,* 30 Cal. App. 144, 151, 155, [157 Pac. 516].) [8] The lower court seemed to be in doubt upon the matter and expressed the opinion that the declaration in the will was not competent to prove ownership or a separate interest in the property in Mrs. Potter and, in admitting the document, reserved to itself the right to strike it out without motion if it saw fit. In this condition of the record we may assume that it did so, and that the declaration was disregarded. Furthermore, prejudicial error will not be assumed. (*Estate of Angle,* 148 Cal. 102, 107, [82 Pac. 668].) We are unable to see that any prejudicial result followed the court's error. The declaration did not add anything to the weight of the other

facts upon which the court has decided against the plaintiff. With or without its consideration we feel the result must have been the same.

[9] The plaintiff offered in evidence two letters—one written by himself and received by his wife during her lifetime, the other written and mailed some time after her death—as tending to show a friendly relation between himself and his wife. They were properly excluded. They formed no part of the *res gestae,* and were in no way connected with the circumstances surrounding the transactions involved in the action.

The plaintiff moved for a new trial below, basing his motion upon alleged newly discovered evidence, the purport of which was that the witnesses would testify that Mrs. Potter in her lifetime frequently referred to the property as "our home, Henry's [plaintiff's] earnings paid for it, and it is in my name for us both." As we have already pointed out, such declarations, if made, would have little weight in the face of the controlling circumstances under which the property was acquired. [10] The granting or refusing a new trial rests so largely in the discretion of the court that its action in that regard will not be disturbed except upon the disclosure of a manifest and unmistakable abuse. (*Harrison* v. *Sutter St. Ry. Co.,* 116 Cal. 156, 161, [47 Pac. 1019].) No abuse of that discretion appears in the instant case.

The consideration for the purchase and improvement of the lots in question having been paid by the wife of the plaintiff from her separate funds, it follows that the lots themselves did not become a part of the community property of the spouses. No error appearing in the record requires a reversal.

The judgment is affirmed.

Knight, J., *pro tem.,* and Richards, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 9, 1920.

All the Justices concurred, except Sloane, J., who was absent.