[Civ. No. 16346.   Second Dist., Div. One.   Oct. 5, 1948.]

TERESA IOLA MAZZENGA, Appellant, v. SADIE ROSSO et al., Respondents.

Joseph A. Lazaroni, Edmund M. Bluth, McCarroll & McCarroll and Neil G. McCarroll for Appellant.

Albert G. Bergman for Respondent.

DORAN, J.—According to the appellant's brief, "The suits below were in the nature of quiet title and accounting actions to determine conflicting claims to real property, chattels, monies and credits accumulated by deceased, Antonio Mazzenga, and defendant Sadie Rosso (Mazzenga) with whom he was living at the time of his death."

The record discloses that Teresa Iola Mazzenga and the decedent were married at Pittsburgh, Pennsylvania, on November 24, 1904. In 1907, Mr. and Mrs. Mazzenga moved to Italy; in 1912, Antonio Mazzenga returned, alone, to the United States, and after a short stay in New York City resided in Pittsburgh until May 20, 1919. On the latter date Mazzenga and one Sadie Schear were married at Steubenville, Ohio, under the name of Thomas Rosso; in 1922 the two moved to California. As set forth in appellant's brief, "from that time until his death (intestate) on February 19, 1946, the two lived together, worked together and accumulated the properties which are the subject of this litigation." Sadie Rosso (Mazzenga) had operated a rooming house in Pittsburgh which was sold prior to removing to California, and there is evidence that Sadie "had about a thousand dollars when we came out here (to California)"; that Mazzenga then had no money; that the real property in question was held by Antonio and Sadie Mazzenga, as husband and wife, in joint tenancy, and was purchased with money earned by these parties during the purported marriage. It appears that Antonio and Teresa, the first wife, had five children, one of whom, Maria Cappetto, testified at the trial. Antonio and Sadie, the second wife, had no children. There is evidence that Antonio Mazzenga had voiced an intention to bring the first wife back to the United States but that Teresa never did return here during Mazzenga's lifetime.

The judgment of the trial court was that the defendant Sadie Rosso was the lawful wife of Antonio Mazzenga, deceased, and as survivor of that marriage became the owner of

the real and personal property involved herein; that Teresa Mazzenga, the first wife, and the daughter Maria Cappetto, intervener, had no interest in said property. The findings were, "That at the time of his said marriage to defendant, Sadie Rosso, there was no existing marriage between said Tom Rosso (Mazzenga), and the said plaintiff, Teresa Iola Mazzenga"; that the marriage with Sadie Rosso was legal; and "That during all of said time the said plaintiff, Teresa Iola Mazzenga, had full knowledge that said Tom Rosso and Sadie Rosso were living together as husband and wife and that never during any of said time did she, (Teresa) . . . assert or claim any rights as a wife of the said Tom Rosso."

The basis for the trial court's decision is set forth in a memorandum of opinion filed herein: "The presumption of continuance which ordinarily attaches when the relation of husband and wife has once been shown does not apply when the validity of a second marriage is called in question. In such instances the presumption as to the validity of the second marriage displaces the presumption as to the continuance of the first relation. Under the decisions it appears to the Court that the plaintiff should have submitted proof as to whether or not Antonio Mazzenga obtained a divorce in the County of Allegheny, Pennsylvania. For the reasons as stated herein it appears that judgment must be for the defendant Sadie Rosso." In so ruling, the trial court followed the law stated in *Marsh* v. *Marsh,* 79 Cal.App. 560, 567 [250 P. 411]: "It has been held time and again by the Supreme Court of this state that mere proof of a prior marriage and the continued life of both spouses is not sufficient to make a case against a second ceremonial marriage, that there must be a further showing that the first marriage has not been set aside by judicial decree," citing *Estate of Hughson,* 173 Cal. 448 [160 P. 548], and other cases. The burden of proof, is, of course, on the party attacking the validity of the second marriage. That such is the law, there can be no doubt.

The appellant argues, however, that "The law does not insist upon any wooden or procrustean rule as to specific evidence required to overcome a presumption," and that "The evidence in the instant case overcomes the presumption of the validity of the second marriage." In appellant's reply brief it is contended that "The rights of a 'putative wife' do not prevail over those of the *'de jure'* wife upon the death of the bigamous husband." As noted in respondent's brief, the above argument is, in effect, merely that the trial court "made its

findings upon the *wrong version* of the conflicting evidence.'' Since the record discloses substantial evidence in support of the judgment below, such contention on appellant's part, cannot, under the long established rules of appellate procedure, prevail.

The record does not indicate that the plaintiff, Teresa Mazzenga, testified either in person or by way of deposition. Evidence offered by plaintiff's counsel consisted merely of record proof of Teresa's marriage to Antonio Mazzenga, also known as Tom Rosso, with no proof concerning the existence or nonexistence of any divorce or annulment of such marriage, other than the daughter's testimony that the mother, who resided in Italy, did not, to the daughter's knowledge, receive any divorce papers from the United States. Maria Cappetto, the daughter, also testified: ''Well, I asked him (Antonio Mazzenga) if he was have a divorce, how come he was living with another woman when I came to this country, and he told me that he was never divorced, that he didn't believe in divorces''; that in the presence of Sadie Rosso, the second wife, Mazzenga ''always tell me that he never got no divorce, they were married in the Catholic Church, and that they never believe in divorce.'' To other witnesses Mazzenga stated an intention to bring Teresa, the first wife, back to the United States. However, the second wife, Sadie Rosso, testified: ''I asked him why he didn't tell me that he was married before he married me, and that he had a wife and family, and he said, well, it didn't concern me because he was divorced, he was a single man and he just considered it wasn't any of my affairs. . . . I asked him if he had any papers to show, and he said, 'No, I did have them but I lost them,' '' and that the witness never brought up the subject again. Dr. Stern, foreign law librarian, testified that, from 1908 to 1946, the Italian law did not permit divorces, but that during that period, marriages could be annulled for certain reasons.

In *Estate of Krone,* 83 Cal.App.2d 766, 769 [189 P.2d 741] (Feb. 20, 1948), the court said: ''From the foregoing review it appears that the preponderant holdings of the appellate courts coincide with the view that upon the dissolution of a putative marriage by decree of annulment or death, the (putative) wife is to take the same share to which she would have been entitled as a legal wife. . . . the logic appears irrefutable that if according to statute [Prob. Code, § 201] the survivor of a valid, ceremonial marriage should be entitled to take all of the community estate upon its dissolution, then by parity of reasoning, why should not the wife

inherit the entire estate of a putative union upon the death of her husband intestate. Clearly she does inherit it all.'' It is argued in appellant's brief that the Krone case, which involved a second marriage during the interlocutory year following a divorce, is not factually similar to the present situation. The analogy, however, is too close to be ignored, and the principle there enunciated must be determinative of the instant appeal. Nor has the appellant cited any decision which would lead to a different determination.

The appellant also contends that ''The discretion of the trial court was abused in arbitrarily refusing to reopen the case'' for additional evidence after submission of the cause. Appellant's reply brief states that Teresa Mazzenga ''is now in Los Angeles and awaits an opportunity to testify.'' The fact that this matter of reopening the case involved an exercise of discretion on the part of the trial court, and that no abuse of that discretion appears, obviously presents no point for reversal.

The judgment is affirmed.

York, P. J., concurred.

WHITE, J.—I concur. At the time decedent married respondent the latter was operating a rooming house in Pittsburgh, which she sold prior to the time she and decedent moved to California. At the time they migrated to this state, respondent had about a thousand dollars, while decedent possessed no money or property. The property here in question was accumulated through the joint efforts of decedent and respondent, working side by side over a period of some 27 years. There is substantial evidence in the record to support the finding of the trial court that respondent, at the time of her marriage to decedent, and at all times thereafter, honestly believed that at the time of the marriage he was a single man.

Appellant contributed nothing toward the acquisition of the property here in question and evidenced no interest whatsoever in the existence of decedent for approximately 34 years prior to his death. She apparently awakened to her identity as his wife and her claimed interest by reason of such status only upon his demise and the disclosure of his interest in the property here involved. Under the facts present in the case at bar, I am persuaded that under the plainest principles of equity the property here in question should be divided as community property would be upon the dissolution by death of a valid marriage.