[Civ. No. 18781.   Second Dist., Div. Two.   Feb. 18, 1952.]

Estate of ROBERT WILLIAM FOY, Deceased. LAURETTA BEATY FOY, Respondent, v. ROBERT F. FOY, a Minor, Appellant.

George I. Devor for Appellant.

John Bricker Myers for Respondent.

MOORE, P. J.—This is an appeal by the guardian of the estate of Robert F. Foy, a minor, from the "Order and Decree of Settling of Account and of Final Distribution" distributing the whole of the estate of Robert William Foy, deceased, to Lauretta Beaty Foy, the putative wife of decedent.

As grounds for reversal appellant contends that (1) the evidence does not sustain the finding that Lauretta Beaty Foy was the putative wife of decedent and (2) the sum of $10,000 paid to the estate by North American Aviation, Inc., was a gratuity and should be distributed in accordance with the laws of succession relating to separate property.

Decedent was killed in the course of his employment as a test pilot with North American Aviation, Inc. He died intestate leaving four minor children, one of whom is Robert, child of his first marriage; two of whom are respondent's children by a prior marriage and who had been adopted by decedent, and one of whom is the issue of decedent and respondent. The estate consists principally of insurance benefits in the amount of $10,000 paid by North American Aviation, Inc., his employer, and the sum of $347.27, accrued salary.

Respondent concedes that her marriage to decedent which took place in Tijuana, Mexico, on May 16, 1945, was void since at that time his marriage to his first wife, Vivienne, had not been finally dissolved. The record discloses that Vivienne was granted an interlocutory decree of divorce in New York on May 4, 1945, which was not entered until May 22, 1945,

and did not become final until the expiration of three months thereafter. (*Rothstein* v. *Rothstein*, 40 Misc. 101 [81 N.Y.S. 342].) The trial court found that decedent and respondent played the stellar roles in a marriage ceremony after consultation with and upon the advice of an attorney at Tijuana; they cohabited as man and wife from the date of their futile rites until decedent's death; at the time of the hymeneal venture, Lauretta "believed in good faith that she was the lawfully wedded wife of decedent"; she had received no information as to the illegality of her wedding until the assertion in August, 1950, by objectors of their interest in the estate. From such findings the court concluded that respondent was the putative wife of decedent.

Respondent testified she first met decedent in 1943, at which time they were both in the Air Force. They subsequently met on divers dates until May, 1945, in San Francisco where, in the presence of witnesses, he told her he was divorced and they could be married as soon as he could arrange for a leave. They decided to go to Mexico for the marriage because decedent would be able to obtain a leave of absence for only a short time. He inquired at the Mexican Embassy in Los Angeles regarding marriage in Mexico. An appointment was made for them with an attorney in Tijuana. On May 16, 1945, accompanied by another couple on nuptials bent, they called at the office of the attorney who asked them questions and had them fill out forms; they were then introduced by the attorney to a magistrate who read a marriage ceremony to both couples, after which all parties signed the register. Respondent was told that it was a "proxy" marriage and that "you get married in another country that way, where you are not a resident and you have to have a proxy appointed who is a legal resident and that they serve as your proxy in carrying out the wedding arrangements"; that it would take about three days to register the marriage, after which time the certificate would be sent to them. Some days later they received the marriage certificate through the mail. Her testimony was that she and Robert William Foy lived together from the date of the ceremony at Tijuana until his decease.

This testimony supports the finding that respondent was the putative wife of decedent. ■ The term "putative marriage" is applied to a matrimonial union which has been solemnized in due form and good faith on the part of one or of both of the parties but which by reason of some legal infirmity is either void or voidable. ■ The essential basis

of such marriage is the belief that it is valid. (*Vallera* v. *Vallera*, 21 Cal.2d 681, 684 [134 P.2d 761]; *Estate of Krone*, 83 Cal.App.2d 766, 768 [189 P.2d 741]; McKay, Community Property, 2d ed. p. 92.) ■ Where a marriage is celebrated in the interlocutory period under circumstances which establish it as a putative marriage, the property thereafter accumulated by the couple belongs to the community estate and upon the death of the husband, intestate, his widow is entitled to take the entire estate. (*Estate of Krone, supra*; Prob. Code, § 201.) Therefore the sum of $347.27, representing accrued earnings of decedent at the date of death, is distributable to respondent as the putative wife.

## THE $10,000

■ The only evidence as to the nature of the insurance benefits paid to the estate by decedent's employer is the testimony of the witness Snyder of North American Aviation, Inc. It disclosed that all employees of the corporation duly authorized to fly in line of duty are included in an insurance plan for accidental death as the result of flights. The amount of benefits of such accidental death shall be $10,000. "Such benefits will be in addition to the benefits of Workmen's Compensation insurance, if any, and *if the employee is enrolled for the corporation's group insurance plan,* that shall likewise be in addition to the benefits provided by such group insurance, if any."

Upon that evidence the court found that "the sum of $10,000 paid to the estate of decedent by North American Aviation, Inc. is a gratuity paid pursuant to the policy of said Corporation to pay such gratuity to the estate of employees killed during and in the course of their employment; that such gratuity was paid as a result of and during the performance of personal services by the decedent during his lifetime and while living with petitioner, Lauretta Beaty Foy, and was a part of the consideration for the services rendered by the decedent on the behalf of the corporation." From such findings the court concluded that the entire estate, including the $10,000 gratuity, is community property and as such distributable to respondent as the putative wife of decedent. Such conclusion is correct.

■ Existence of the marital relationship is indispensable to the acquisition of community property. ■ That which is earned by either spouse during coverture is a part of the community estate. (Civ. Code, § 164.) If it is earned after dissolution of the marriage it belongs of course to him alone

whose efforts produced it. (*Feig* v. *Bank of Italy*, 218 Cal. 54, 56 [21 P.2d 421].) ■ The fact as to whether it is community or separate property is to be determined by the proof showing the mode of acquisition. (*Estate of Granniss*, 142 Cal. 1, 4 [75 P. 324]; *Potter* v. *Smith*, 48 Cal.App. 162, 168 [191 P. 1023].)

■ The proceeds of an insurance policy on the life of the husband are community property to the extent that the premiums were paid with community funds. (*Travelers Ins. Co.* v. *Fancher*, 219 Cal. 351, 353 [26 P.2d 482]; *Dixon Lbr. Co.* v. *Peacock*, 217 Cal. 415, 418 [19 P.2d 233].)

■ The $10,000 was not intended as a gift to Mr. Foy. The insurance on his life was paid for by his employer as a part of the compensation for his services. Its relation to decedent may be assimilated to the retirement fund accumulated for the benefit of an employee during his tenure. It was intended by both employer and decedent as a reward for services performed. Decedent's services paid the premiums. While there may have been no express agreement for such payment as a part of his wages it was forcefully implied by the hazardous nature of the services undertaken. While it is a gracious assumption that North American Aviation Inc. out of the goodness of its heart had arranged for $10,000 gifts to those employees who might in line of duty fly over the "Great Divide," yet viewing the transaction in an impartial and realistic light it is manifest that there was no real donative intent present whatsoever.

The nearest approach to a precedent to be found is the *Estate of Hansen*, 91 Cal.App.2d 610, 613 [205 P.2d 686]. Hansen was an army officer, a flyer in the South Pacific. Having failed to return from a dangerous mission, his name was carried on the records of the War Department as a missing person. More than two years elapsed before it was established that the soldier had gone to his death on the date he was first listed as missing. The moneys intended as compensation for service and credited to the brave officer for the period after his death were in fact an actual gratuity given to his estate, paid under a mistake of fact or at least with full knowledge that Hansen might not return and that the funds would be delivered to his estate. This court (Div. 3) pointed out that "the payments were not made as a bonus for services rendered prior to death." The facts there bear no resemblance to those at bar, except that both were flyers. The government

generously paid Hansen's estate for the years he was "missing" whereas in fact he was dead.

As Foy paid for insurance on his life by his services, the $10,000 was a community fund and properly inventoried as a community asset of his estate.

Affirmed.

Fox, J., concurred.

McComb, J.—I dissent from the portion of the opinion holding the $10,000 community funds.

Appellant's petition for a hearing by the Supreme Court was denied April 17, 1952. Schauer, J., and Spence, J., were of the opinion that the petition should be granted.