[Civ. No. 23028. Second Dist., Div. Three. Dec. 11, 1958.]

MANYA M. KUNAKOFF, Appellant, v. BESSIE WOODS et al., Respondents.

Betts, Ely & Loomis and William C. Stein for Appellant.

Chase, Rotchford, Downen & Drukker, Donn B. Downen, Jr., and Otto M. Kaus for Respondents.

VALLÉE, J.—Appeal by plaintiff Manya M. Kunakoff from a judgment of dismissal in an action for wrongful death.

At the commencement of the trial the court sustained defendants' objection to the introduction of any evidence on behalf of plaintiff Manya M. Kunakoff, referred to as plaintiff, and granted their motion to dismiss the action as to her. The objection was sustained and the action was dismissed on the ground it appeared from the complaint, considered with certain affidavits, that plaintiff is not an heir of the deceased and is not therefore entitled to maintain the action.

The facts are undisputed. On May 24, 1924, Manya participated in a marriage ceremony with David Kunakoff in a church of the Molokan faith of which they were members. The ceremony was performed by a regular minister of that faith. Manya was 18 and David 19 years of age at the time. No license was obtained, and no other ceremony or act was done to validate the marriage. The minister who performed the ceremony did not make or file a record of the marriage.[1] From the time of the ceremony until David's death Manya and David lived publicly and avowedly as husband and wife. One child, plaintiff Mike D. Kunakoff, now 30 years of age, was born of the union. David was killed on June 11, 1955, allegedly as a proximate result of the negligence of defendants.

At the hearing of the motion to dismiss it was stipulated that Manya was a putative wife; that she did not live with

[1]Manya had a very elementary education in that she went to grammar school until she was 14, when she went to work to help her family earn a living. Her employment from that time until she married was as a laborer in a fruit-packing plant. Her family and David's family attended the Molokan Church prior to the marriage, and those who are still alive and their children are still attending that church. All of the arrangements for the marriage were made with a minister of that church by their parents. It was thought that a wedding in church fulfilled all the necessary procedural functions. Neither Manya nor David was informed at any time by the minister or any one that they needed a license or that the minister was required to sign and record a marriage certificate. In the course of the ceremony each agreed to become the spouse of the other, and the minister pronounced them man and wife. There were over 500 people at the wedding which lasted from 11 a.m. to 3 p.m. All their relatives and friends always considered them to be husband and wife. Neither had been married before; there has never been any action for annulment, divorce, or separate maintenance. They bought property as, and had a joint bank account in the name of, Mr. and Mrs. Kunakoff.

David prior to the religious ceremony; that the relation was not meretricious; and that Manya lived with David from the time of the ceremony until his death in good faith and the honest belief she was his legal wife.

Section 377 of the Code of Civil Procedure, in pertinent part, provides: "When the death of a person . . . is caused by the wrongful act or neglect of another, his heirs or personal representatives may maintain an action for damages against the person causing his death."

Plaintiff contends she is an heir of David within the meaning of section 377. Defendants say a putative wife is not an heir within the meaning of the section.

█ An action for damages for wrongful death was unknown at common law. It is wholly statutory in origin and it must stand or fall by the terms of the statute. (*Norman* v. *Murphy*, 124 Cal.App.2d 95, 97 [268 P.2d 178].) █ The purpose of section 377 is to compensate heirs for the pecuniary loss suffered by them by reason of the loss of their relatives by death. If the deceased has no heirs, the statute does not apply. (*Estate of Bright* v. *Western Air Lines, Inc.,* 104 Cal. App.2d 827, 829 [232 P.2d 523].) █ "[T]he word [heirs] is used in its common-law sense, and denotes those who are capable of inheriting from the deceased person generally, and without the limitation resulting from statutes relating to the distribution of community property." (*Redfield* v. *Oakland C. S. Ry. Co.,* 110 Cal. 277, 290 [42 P. 822, 1063]; *Buckley* v. *Chadwick,* 45 Cal.2d 183, 192 [288 P.2d 12, 289 P.2d 242]; *Estate of Riccomi,* 185 Cal. 458, 462 [197 P. 97, 14 A.L.R. 509]; *Follansbee* v. *Benzenberg,* 122 Cal.App.2d 466, 474 [265 P.2d 183, 42 A.L.R.2d 832]; *Pacific Emp. Ins. Co.* v. *Hartford etc. Ins. Co.,* 143 Cal.App.2d 646, 649 [299 P. 2d 298]; *Fiske* v. *Wilkie,* 67 Cal.App.2d 440, 444 [154 P.2d 725].)

"The 'heirs' of a person are those whom the law appoints to succeed to his estate [in California, estate of any kind] in case he dies without disposing of it by will." (*Hochstein* v. *Berghauser,* 123 Cal. 681, 687 [56 P. 547]; *Estate of Watts,* 179 Cal. 20, 22 [175 P. 415]; *Estate of Wilson,* 184 Cal. 63, 67 [193 P. 581].) " 'The word "heirs" means the persons who would be entitled to succeed at his death to his estate in case of intestacy, by virtue of our statutes relative to succession.' " (*Dickey* v. *Walrond,* 200 Cal. 335, 339 [253 P. 706]; *Estate of Riccomi,* 185 Cal. 458, 462 [197 P. 97, 14 A.L.R. 509]; *Fiske* v. *Wilkie,* 67 Cal.App.2d 440, 444 [154 P.2d 725]; *Estate*

*of Baird,* 135 Cal.App.2d 333, 337 [287 P.2d 365].) ▮ Probate Code, sections 200-231, are the source in every case for a designation of the persons who meet the description of heirs. (*Dickey* v. *Walrond,* 200 Cal. 335, 339 [253 P. 706].) ''Succession is the acquisition of title to the property of one who dies without disposing of it by will.'' (Prob. Code, § 200.) ▮ On the death of the husband, in the absence of testamentary disposition, the community property belongs to the surviving spouse, with exceptions not relevant here. (Prob. Code, § 201.) ▮ Generically, the term ''spouse'' may include a putative wife. (41 C.J.S. 393, § 3.)

▮ A putative marriage is a matrimonial union solemnized in due form and celebrated in good faith by at least one of the parties but which, by reason of some legal infirmity, is either void or voidable. (*Estate of Foy,* 109 Cal.App.2d 329, 331 [240 P.2d 685] ; *Union Bank & Trust Co.* v. *Gordon,* 116 Cal.App.2d 681, 689 [254 P.2d 654] ; 32 Cal.Jur.2d 355, § 27.)

▮ ''It is the law in this state that on dissolution of a putative marriage the property which the de facto spouses have acquired as a result of their joint efforts is to be treated as though it was the accumulation of a valid marriage.'' (*Union Bank & Trust Co.* v. *Gordon,* 116 Cal.App.2d 681, 689 [254 P.2d 644] ; *Macchi* v. *La Rocca,* 54 Cal.App. 98, 100 [201 P. 143] ; *Santos* v. *Santos,* 32 Cal.App.2d 62, 65 [89 P.2d 164] ; *Lazzarevich* v. *Lazzarevich,* 88 Cal.App.2d 708, 714 [200 P.2d 49] ; 35 Am.Jur. 215, § 52 ; 11 Am.Jur. 180, § 8.) The proportionate contribution of each party to the property is immaterial in this state. (*Vallera* v. *Vallera,* 21 Cal.2d 681, 683 [134 P.2d 761].)

▮ Professor Burby[2] says : ''Property acquired during the continuance of a putative marriage constitutes community property and should be distributed as such if a putative spouse is involved. In some of the older cases there are statements that such property cannot be considered community property because community property is an incident of only a legally recognized marriage. However, it is further stated that the property should be distributed the same as it would be if it were community property. The more recent cases have discarded this 'double talk' and follow the civil law rule respecting putative marriages.'' (*Family Law for California Lawyers,* pp. 357, 358.)

''The property which the de facto spouses have acquired

---

[2] Professor of Law, School of Law, University of Southern California.

as the result of their joint efforts is treated as though it were the accumulation of a valid marriage. Thus, if the survivor of a valid, ceremonial marriage would be entitled to take all the community estate on its dissolution, then by parity of reasoning the wife should inherit the entire estate of a putative union on the death of her putative husband intestate." (32 Cal.Jur.2d 355, § 27.)

*Estate of Krone*, 83 Cal.App.2d 766 [189 P.2d 741], was a probate proceeding. The deceased left surviving him his putative wife, Fanny, and three children by a former marriage. The question arose when the estate was ready for closing. The three children filed a claim of interest in the probate proceeding declaring that the property of the estate was separate property of the decedent, that Fanny was not the lawful wife of the decedent, and demanded that the estate be distributed to them. Fanny filed a claim of interest in which she alleged she was the sole surviving heir of the decedent; that she married him in April 1934, and continuously lived with him as his wife to the date of his decease; that during such period as a result of their joint efforts all the personal property comprising the estate of decedent was accumulated; that at the time of such marriage she believed in good faith that she was the lawfully wedded wife of decedent. The probate court found that at the time of the marriage neither had any property; that as a result of their joint efforts the parties accumulated personal property of the value of $16,412.51; that Fanny was a putative wife; that the decedent and Fanny were equal partners and the property of the parties was partnership property. The probate court concluded and adjudged that the property acquired by the decedent and Fanny was partnership property; that they were owners as equal partners thereof; that the three children were the only heirs at law of decedent; and that the estate of the decedent was vested in them subject to administration.

After an exhaustive review of the cases in this state the court stated (83 Cal.App.2d 769) :

"From the foregoing review it appears that the preponderant holdings of the appellate courts coincide with the view that upon the dissolution of a putative marriage by decree of annulment or by death the wife is to take the same share to which she would have been entitled as a legal spouse. However, none of the authorities reviewed involved a consideration of the statute subsequently enacted whereby the surviving spouse of a valid marriage inherits the entire estate in event of

intestacy. (Prob. Code, § 201.) But the logic appears irrefutable that if according to statute the survivor of a valid, ceremonial marriage shall be entitled to take all of the community estate upon its dissolution, then by parity of reasoning why should not the wife *inherit* the entire estate of a putative union upon the death of her husband intestate? Clearly she does *inherit* all. .

"That appellant herein should be entitled to the inventoried estate is implemented by the finding that she and decedent 'were partners with joint and equal rights as partners,' and that all the property of the estate was acquired by the parties during the marriage. But aside from the extraordinary services rendered by appellant she justly claims the estate by virtue of the authorities above reviewed, pursuant to section 201, *supra*. This section had not been enacted at the time of the pronouncement of the Coats [160 Cal. 671 (118 P. 441, 36 L.R.A.N.S. 844)] and Schneider [183 Cal. 335 (191 P. 533, 111 A.L.R. 1386)] cases and for that reason it was not mentioned in either of them which may explain the silence of the subsequent decisions upon its provisions. However, in view of the positive declarations in such later decisions it would now be contrary to established law to deny to this putative wife her rights as a surviving spouse to *inherit* the total of the gains of the putative marriage.

"In view of the foregoing, consideration of the second assignment is unnecessary. If the estate belongs to appellant as the survivor of the putative marriage, proof of her oral agreement though admissible could add nothing to establish her rights as owner under section 201.

"It is therefore ordered that the decision and judgment be modified as follows: (1) strike finding VIII and substitute in lieu thereof the following: The court finds that decedent left surviving him three adult children by a previous marriage, Allen Krone, Seymour Krone and Mildred Weitzmer; (2) strike paragraph 5 from the conclusions of law and substitute in lieu thereof the following: That the entirety of the property listed in the inventory belongs to Fanny Krone subject to administration; (3) strike that portion of the third paragraph of the judgment after the word 'marriage' and substitute in lieu thereof the following: but the entirety of the estate of said decedent is vested in Fanny Krone subject to administration.'' (Emphasis added.)

As modified, the judgment was affirmed. The effect of

Krone was to recognize a putative wife as a legal spouse for the purpose of succession. (Also see *Mazzenga* v. *Rosso,* 87 Cal.App.2d 790, 793 [197 P.2d 770]; *Turknette* v. *Turknette,* 100 Cal.App.2d 271, 274-275 [223 P.2d 495].)

Referring to *Estate of Krone, supra,* 83 Cal.App.2d 766, it has been said ''the putative spouse was held entitled to take the share of the estate to which he or she would have been entitled as a legal spouse. Therefore, since the property involved would have been community property in a valid marital relation, and since under Probate Code § 201 a legal widow would have been entitled to the whole of such property, the surviving putative wife was similarly entitled to the whole.'' (16 Cal.Jur.2d 103, § 54.)

The appeal in *Estate of Foy,* 109 Cal.App.2d 329 [240 P.2d 685], was from the final decree of distribution distributing the whole of the estate of Robert William Foy, deceased, to Lauretta Beaty Foy, the putative wife of the decedent. Lauretta Beaty Foy was the respondent. The facts were these (p. 331): ''The trial court found that decedent and respondent played the stellar roles in a marriage ceremony after consultation with and upon the advice of an attorney at Tijuana; they cohabited as man and wife from the date of their futile rites until decedent's death; at the time of the hymeneal venture, Lauretta 'believed in good faith that she was the lawfully wedded wife of decedent'; she had received no information as to the illegality of her wedding until the assertion in August, 1950, by objectors of their interest in the estate. From such findings the court concluded that respondent was the putative wife of decedent.'' Holding that the entire estate of the decedent was community property distributable to the putative spouse in the probate proceeding, the court stated (p. 332): ''Where a marriage is celebrated in the interlocutory period under circumstances which establish it as a putative marriage, the property thereafter accumulated by the couple belongs to the community estate and upon the death of the husband, intestate, his widow is entitled to take the entire estate. (*Estate of Krone, supra* [83 Cal.App.2d 766]; Prob. Code, § 201.)''

*Speedling* v. *Hobby,* 132 F. Supp. 833, says (p. 835): ''Under the rule of law enunciated in the *Estate of Krone, supra* [83 Cal.App.2d 766], the claimant herein [a putative wife] is entitled to take the same share which a lawful widow takes in any property which may have been acquired during the marriage by the spouses and to which the deceased died

intestate. In the instant case since all of the property of decedent was acquired during his marriage to petitioner she is legally entitled to his entire estate. She therefore takes the same share that a legal widow would be entitled to take.''

And *Aubrey* v. *Folsom*, 151 F. Supp. 836, says (p. 839):
''It is respondent's contention that the California courts recognize the putative spouse for *equitable* reasons only, and hence, grant her a share in the estate of the intestate putative spouse as a rule of equity and not as a rule of intestate succession. Since § 416(h) (1) refers to the state law of 'devolution of intestate personal property,' and not the state law of equity, the Government argues, the putative spouse does not have the status of a wife or widow within the meaning of § 416(h) (1). The Government further contends that even though the surviving putative spouse may be recognized as a 'surviving legitimate spouse,' under the California law of intestate succession for some purposes, i.e., to the extent that the estate consists of 'quasi-community property,' she has not yet been considered as having the same rights as a legitimate spouse with respect to the decedent's separate property, and thus, under the California law, does not have the *same* status as a wife or widow, as such status is defined in § 416(h) (1).

''Under California Probate Code, § 201, a surviving spouse inherits all of the community property in the estate of the intestate spouse. This section has been expressly held to be applicable to a surviving putative spouse, thus giving the putative spouse a right of *inheritance* (as distinguished from an equitable right) in all of the 'quasicommunity property' in the estate of the intestate putative spouse (*In re Estate of Krone*, 83 Cal.App.2d 766, 769-770 [189 P.2d 741], and *Mazzenga* v. *Rosso*, 87 Cal.App.2d 790 [197 P.2d 770]).''

 Applying the foregoing authorities to the facts at bar, Manya, under our law, is recognized as a surviving legal spouse for the purposes of succession; as a putative wife she is granted a share in David's estate as a rule of succession; section 201 of the Probate Code applies to her; she is given a right of inheritance in all property acquired by David and her during the marriage; she *inherits* that property, not as a matter of equity, but as an heir of David. Since an heir of a person is one who is entitled to succeed at his death to his estate in case of intestacy by virtue of our statutes relative to succession, and since Manya succeeds to David's estate by virtue of section 201 of the Probate Code, she is

David's heir. As an heir may bring an action for wrongful death under section 377 of the Code of Civil Procedure, and inasmuch as Manya is an heir, she is entitled to maintain the action.

Reversed.

Shinn, P. J., and Wood (Parker), J., concurred.

A petition for a rehearing was denied January 8, 1959, and respondents' petition for a hearing by the Supreme Court was denied February 4, 1959.