[Civ. No. 25482.   Second Dist., Div. Three.   Dec. 29, 1961.]

Estate of CLABE LONG, Deceased.   EMMA LONG, Objector and Respondent, v. EDDIE McJIMSEY, Petitioner and Appellant.

734

Simmons & Simmons and George A. Simmons for Petitioner and Appellant.

Bryce D. Wisner for Objector and Respondent.

FORD, J.—On March 15, 1960, Eddie McJimsey, as the administrator of the estate of Clabe Long, deceased, filed his first and final account and report and petition for final distribution. Therein it was stated that all of the estate was the separate property of the decedent and that the next of kin and only heirs at law of the decedent were his half-brothers, Eddie McJimsey, Louis McJimsey, and Wesley Long, and his half-sister, Mamie Abner. On March 23, 1960, Emma L. Long filed a petition in which she stated that she and Clabe Long were married in Los Angeles on June 29, 1948, and thereafter continuously resided in Los Angeles "up to the date of the death of said deceased as husband and wife." She asserted in substance that she was entitled to all of the community property accumulated during the period of the marriage.

At the time of the hearing of the petition for final distribution, Emma Long appeared and objected to the distribution of the property as prayed, her position being that which she

had set forth in her petition of March 23, 1960. After considering the evidence offered by the parties, the court made findings of fact which were in part as follows: 1. At the time of his death on May 2, 1958, Clabe Long was married to Emma Long and Emma Long was the surviving widow of Clabe Long. 2. Clabe Long and Emma Long procured a marriage license from the County Clerk of the County of Los Angeles on June 29, 1948, and thereafter on that date in Los Angeles they ''participated in a marriage ceremony performed by a minister of the gospel entitled under the laws of the State of California to perform marriages''; the certificate of marriage was filed in the office of the county recorder on July 1, 1948. 3. ''Emma Long entered into such marriage ceremony in good faith, believing she was a single woman and believing that such marriage was in all respects valid''; thereafter, ''in good faith, believing she was the lawful wife of said decedent,'' she lived with him in Los Angeles until his death. 4. Except for three items of a total value of $3,462.23, all of the estate ''was acquired by said decedent and said Emma Long through their joint efforts while . . . living together as husband and wife.''

Under the decree based on the findings of fact, it was ordered that all of the property available for distribution, except that determined to have been the separate property of Clabe Long, be distributed to Emma Long; it was also ordered that one-half of the separate property available for distribution be distributed to her.

A motion for a new trial (see *Estate of Perkins*, 21 Cal.2d 561, 566-567 [134 P.2d 231]) was made by Eddie McJimsey. That motion was denied.

In the notice of appeal it is stated that ''Eddie McJimsey, Administrator of the estate of Clabe Long, Deceased, hereby appeals from the Order and Judgment made on the 5th day of July, 1960, and from the Order denying motion for new trial . . . .'' While an administrator may not appeal from a decree of distribution since he is not a party aggrieved (see *Estate of Kessler*, 32 Cal.2d 367, 369 [196 P.2d 559]), we consider this appeal to be by Eddie McJimsey in his individual capacity as a person interested in the estate as an heir. (See *Estate of Perkins, supra*, 21 Cal.2d 561, 566; *Estate of Strong*, 10 Cal.2d 389, 391 [74 P.2d 231]; cf. *Estate of Murphey*, 7 Cal.2d 712, 716-717 [62 P.2d 374]; *Estate of Babb*, 200 Cal. 252, 255 [252 P. 1039]; *Estate of Conklin*, 139 Cal.App.2d 532, 533 [293 P.2d 794].) Since the order

denying the motion for a new trial is not appealable (although the contentions made with respect to that matter may be reviewed on the appeal from the judgment), the attempted appeal therefrom must be dismissed. (*Estate of Smith*, 175 Cal.App.2d 803, 805 [1 Cal.Rptr. 46].) While the decree of distribution was entered on July 29, 1960, whereas the notice of appeal makes reference to the date of July 5, 1960, we treat the appeal as being from that decree as it was obviously intended to be. (*Cf. Woods* v. *Kern County Mutual Bldg. & Loan Assn.*, 34 Cal.App.2d 468, 473-474 [93 P.2d 837]; see also *Verdier* v. *Verdier*, 118 Cal.App.2d 279, 283 [257 P.2d 723].)

A résumé of the testimony of Emma Long with respect to her relationship with Clabe Long is as follows: She married Mr. Long on June 29, 1948, in Los Angeles. A minister performed the marriage ceremony. (A certified copy of the marriage certificate was received in evidence.) Thereafter she resided continuously with Mr. Long until his death. Prior to her marriage to Mr. Long she had been married; she married Johnnie Brown in 1930 in South Carolina. She separated from him in 1947 and filed suit against him in that year. She further testified as follows: "Q. Was it a divorce suit? A. Well, at that time that is what they were issuing out in the State of South Carolina. . . . Q. What you got was not a divorce paper, but it was a legal separation document, isn't that correct? A. I don't know. . . . Q. . . . . But you never got a divorce from Johnnie Brown, did you? A. That is what they were issuing out at that time, yes. That is all I got. Divorce." Mrs. Long was questioned about a document entitled "Order," which bore the date of July 23, 1947; she had had that document in her possession and it was the order "based on *Emma Brown vs. Johnnie Brown.*" The document was received in evidence when offered by counsel for Eddie McJimsey.[1] She had read the order but did not know

---

[1]The document was in part in the following words:

"STATE OF SOUTH CAROLINA     IN THE COUNTY COURT
COUNTY OF RICHLAND.

Emma Brown,
      Plaintiff,       O R D E R
     -vs-
Johnnie Brown,
      Defendant.
" * * * *

"4. NOW, THEREFORE, it is, Ordered, Decreed and Adjudged, that the plaintiff be granted a legal Separation from the defendant, and

it did not relate to a divorce until her attorney advised her with respect to it after Mr. Long's death. As to statements she made in the application for a marriage license in Los Angeles, she testified as follows: "Q. . . . At the time that you entered into your marriage with Clabe Long, the document indicates that you placed on here that you had never been married before, isn't the [that] correct? A. Yes. The reason why I did that [was] because I thought I had a divorce, was legally married to him. Q. In other words, you had never been married because you thought you had been divorced? A. Yes, and he did, too. Q. The particular notation here on this marriage certificate which states, 'First,' did you place that on yourself as to . . . marriages? . . . A. Yes. Q. And you knew at that time that this was not your first marriage, didn't you? A. No, I didn't. Q. You didn't know you had been married to Johnnie Brown? A. Well, you see, he told me he was married before. . . .Yes, I know I was married to him, but I thought I had a divorce from him. Q. But you knew this was at least your second marriage, didn't you . . .? A. Yes." Mrs. Long further testified as follows: "The last time I saw Johnnie Brown was in '47, and during the time I saw him he had his head all bandaged up. . . . That was in South Carolina." Shortly thereafter she came to California. She was never "served with divorce papers from Johnnie Brown himself."

██ ██ "The rule is too well settled to require discussion that on an appeal this court is required to view the evidence in the light most favorable to sustain the judgment of the trial court, and where there is substantial evidence or proper inference from the evidence to support the findings of the trial

that she be permitted and allowed to live separate and apart from him, and . be relieved of any marital obligations to him; that the defendant be enjoined from molesting, bothering, or going to the home, or about the plaintiff henceforth; that he be relieved of any marital duties to her, and that a legal separation be, and the same is, hereby granted to the plaintiff. That the plaintiff be permitted, if she so desires, to use her maiden name.

July 23rd, 1947          S/   Lagree Bates
                              Judge of the County Court"

The document was attached to a blue cover on which was the type-written word "Original." Also thereon was the following:

"Evelyn Lester, Attorney
Attorney for Plaintiff
18 Taylor Bldg.
Columbia S. C."

738

court, this court, on appeal, will not make factual determinations contrary to those of the trial court.'' (*Estate of Nidever,* 181 Cal.App.2d 367, at 370-371 [5 Cal.Rptr. 343].)

Even if there was in fact an undissolved marriage of Emma and Johnnie Brown in existence when Emma undertook to marry Clabe Long, there is substantial support in the record for the trial court's determination that Emma married Clabe Long in good faith, believing at that time and thereafter until after Mr. Long's death that she was legally free to marry. The law applicable to the facts as found by the court below is stated in *Estate of Krone,* 83 Cal.App.2d 766 [189 P.2d 741]. Therein the court said as follows, at page 768: '' 'Putative marriage' is a phrase derived from the civil law. . . . The term is applied to a matrimonial union which has been solemnized in due form and celebrated in good faith by both parties but which by reason of some legal infirmity is either void or voidable. The essential basis of such marriage is the belief that the marriage is valid. (*Vallera* v. *Vallera,* 21 Cal.2d 681, 684 [134 P.2d 761].) Although null on account of some dissolving impediment, yet by reason of the good faith of the celebrants and the ignorance of such impediment by both or one of them, in the absence of an agreement fixing the respective rights of the parties to the gains of their joint efforts, an equitable division of the estate accumulated by them is made upon a dissolution of the marriage by death or separation. (McKay, *Community Property,* (2d ed.), p. 92.)'' After discussing pertinent decisions, the court said (83 Cal.App.2d, at pp. 769-770): ''From the foregoing review it appears that the preponderant holdings of the appellate courts coincide with the view that upon the dissolution of a putative marriage by decree of annulment or by death the wife is to take the same share to which she would have been entitled as a legal spouse. However, none of the authorities reviewed involved a consideration of the statute subsequently enacted whereby the surviving spouse of a valid marriage inherits the entire estate in event of intestacy. (Prob. Code, § 201.) But the logic appears irrefutable that if according to statute the survivor of a valid, ceremonial marriage shall be entitled to take all of the community estate upon its dissolution, then by parity of reasoning why should not the wife inherit the entire estate of a putative union upon the death of her husband intestate? Clearly she does inherit all.'' (See also *Kunakoff* v. *Woods,* 166 Cal.App.2d 59, 63-67 [332 P.2d 773]; *Union Bank &*

*Trust Co.* v. *Gordon,* 116 Cal.App.2d 681, 689 [254 P.2d 644] ; *Estate of Foy,* 109 Cal.App.2d 329, 331-332 [240 P.2d 685].)

The law as heretofore stated is applicable with respect to the property accumulated by Emma Long and Clabe Long while they were living together if their marriage was putative in nature. ▮▮▮ But, with respect to that which was determined to be the separate property of Clabe Long, the Supreme Court stated the applicable law in *Schneider* v. *Schneider,* 183 Cal. 335 [191 P. 533, 11 A.L.R. 1386], at page 337, as follows : "Under the authorities it is clear that a void marriage confers no rights upon either of the parties to it in respect to the property of the other such as would be conferred by a valid marriage ; . . ." ▮▮▮ However, in the present case the court, in addition to the findings of fact which support the conclusion that a putative marriage existed, made a finding that "at the time of the death of the said decedent, May 2, 1958, said decedent was married to Emma Long . . . and that said Emma Long is the surviving widow of said decedent."

That the trial court was warranted in determining that there was a valid marriage between Emma and Clabe Long is clear from a review of the governing law. ▮▮▮ In *Estate of Smith,* 33 Cal.2d 279 [201 P.2d 539], the court said at page 281 : "It is well established that when a person has entered into two successive marriages, a presumption arises in favor of the validity of the second marriage, and the burden is upon the party attacking the validity of the second marriage to prove that the first marriage had not been dissolved by the death of a spouse or by divorce or had not been annulled at the time of the second marriage. (*Hunter* v. *Hunter*, 111 Cal. 261 [43 P. 756, 52 Am.St.Rep. 180, 31 L.R.A. 411] ; *Wilcox* v. *Wilcox,* 171 Cal. 770, 774 [155 P. 95] ; *Estate of Pusey,* 173 Cal. 141, 143 [159 P. 433] ; *Estate of Hughson,* 173 Cal. 448, 452 [160 P. 548] ; *Hamburgh* v. *Hys.* 22 Cal. App.2d 508, 509 [71 P.2d 301] ; *Immel* v. *Dowd,* 6 Cal.App.2d 145, 147 [44 P.2d 373].) That burden is sustained if the evidence, in the light of all reasonable inferences therefrom, shows that the first marriage was not so dissolved or annulled." (See also *Moran* v. *Superior Court,* 38 Cal.App.2d 328, 332 [100 P.2d 1096].)

▮▮▮ The presumption of the validity of the last marriage was not overcome in the present case because no evidence was offered by the appellant to show that Johnnie Brown was alive at the time of the ceremonial marriage in Los Angeles.

In *Estate of Hughson,* 173 Cal. 448 [160 P. 548], the Supreme Court said at page 453: "In the very recent case, *In re Pusey's Estate, ante,* p. 141 [173 Cal. 141 (159 P. 433)], where a person was seeking to show the invalidity of the marriage of petitioner to Gertrude Pusey, whose estate was involved, this court held that even if the person attacking the sufficiency of certain purported divorce proceedings could do so successfully, it would be necessary to show additionally that petitioner's undivorced wife was living when he married Gertrude Pusey; otherwise there could be no valid finding that he was not the latter's surviving husband. In *Wilcox* v. *Wilcox,* 171 Cal. 770 [155 P. 95], an action for annulment of marriage, it was held that proof of a marriage was not overcome by evidence of an earlier one without a showing of the continuance of the life of both husband and wife up to the moment of the second marriage." (See also *Estate of Newman,* 34 Cal.App.2d 706, 710-711 [94 P.2d 356]; *Hamburgh* v. *Hys,* 22 Cal.App.2d 508, 509 [71 P.2d 301].)

One of the grounds upon which the motion for a new trial was based was that of newly discovered evidence. In support of the motion, an affidavit of the attorney for Eddie McJimsey was filed. Therein the attorney stated that "in preparation of the above entitled cause" he wrote to the clerk of the county court of *Richmond,* South Carolina, asking what the records of the court showed as to any action between Emma and Johnnie Brown with respect to their "marital relations." He received a reply from one Lagree Bates, judge of that court, stating that no record of such an action or suit could be found but that if the affiant could give him any information it was possible that a record of such matter might be located. The attorney then discussed the subject with Emma Long's attorney and received from him a document purporting to be an order of the South Carolina court "setting forth that on July 23, 1947, there was an order decreeing and adjuding [*sic*] that there be granted a legal separation between the said Emma Brown and Johnnie Brown." The affiant believed the "statement" to be true and did not then pursue the matter further. After the hearing of the petition for distribution, he received a telephone call from an attorney residing in Columbia, South Carolina, who informed him that there never had been a proceeding between Emma and Johnnie Brown in South Carolina. The affiant then made a trip to Columbia and found that there never had been a divorce or separate maintenance proceeding

between the Browns in the County of *Richmond,* State of South Carolina. As an exhibit to his affidavit, the affiant furnished a "certification" of the Clerk of the Court of Common Pleas and General Sessions and County Court, Richland County, South Carolina, in which it was certified that there was no record of a marital proceeding between Emma Brown and Johnnie Brown.

As stated in *Fomco, Inc.* v. *Joe Maggio, Inc.,* 55 Cal.2d 162 [358 P.2d 918], at page 165: "A new trial on the ground of newly discovered evidence will be granted only where the affidavit in support thereof recites facts showing that the evidence could not, with reasonable diligence, have been discovered and produced at the trial." It is clear that during the course of his preparation for the hearing of the petition for a decree of distribution, the attorney for the appellant wrote to the clerk of the court in South Carolina and received an answer from Judge Bates to the effect that no record could be found of a proceeding between Emma and Johnnie Brown with respect to their marital relationship. He thereafter obtained from Emma Long's attorney the document purporting to embody a legal adjudication, to which reference has heretofore been made, which he later introduced in evidence on behalf of the appellant. There was a substantial basis for a determination by the court below that the appellant had failed to exercise reasonable diligence with respect to the production at the hearing of the evidence which he claimed to have newly discovered. (*Cf. Estate of Nessel,* 164 Cal.App.2d 798, 805 [331 P.2d 205].)

In any event, whether a motion for a new trial on the ground of newly discovered evidence should be granted in a particular case is a matter to be determined by the trial court in the exercise of a sound discretion. In the present case, in view of the presumption as to the validity of the last marriage and the failure of the appellant to sustain the burden which the law imposed on him, the trial judge was warranted in concluding that a different result was not probable in the event of a new trial. Hence no abuse of discretion appears. (See *Meyer* v. *Parobek,* 119 Cal.App.2d 509, 514 [259 P.2d 948].)

The attempted appeal from the order denying the motion for a new trial is dismissed. The decree of distribution is affirmed.

Shinn, P. J., and Vallée, J., concurred.