MATTER OF GERACE

In Visa Petition Proceedings

A-14083609

*Decided by Board March 20, 1967*

Since beneficiary's marriage to petitioner, a United States citizen, on April 5, 1966, in the Philippines, which marriage was entered into by beneficiary in the belief that her spouse by a previous undissolved marriage was deceased, having been unheard of for 6 years, is a valid marriage until annulled (article 83(2), Philippine Civil Code), a visa petition is approved to accord beneficiary immediate relative status.

ON BEHALF OF PETITIONER: Emigdio P. Bolus, Esquire
237 Henson Street
Angeles City, Philippines
(Brief filed)

The case comes forward on appeal from the order of the District Director, Philippine District, dated November 9, 1966 denying the visa petition for the reason that the petitioner has not established that his marriage to the beneficiary is a valid marriage and that her previous marriage to Rodrigo Pontas at Bato, Biliran, Leyte on December 2, 1959 has not been terminated; although article 83 of the Civil Code of the Philippines creates a presumption of death of a spouse who has been absent for seven years and whose whereabouts are unknown to the remaining spouse, official records establish that seven years had not elapsed since the date of her marriage nor the alleged date of the disappearance of her first husband.

The petitioner, a native-born citizen of the United States, 22 years old, seeks immediate relative status on behalf of the beneficiary as his wife. The beneficiary is a native and citizen of the Philippines, born December 13, 1943. The parties were married at Angeles City, Philippines on April 5, 1966.

In connection with the appeal, counsel has filed a brief in which he sets forth that before her 16th birthday the beneficiary was abducted by Rodrigo Pontas and the parents of the beneficiary filed a criminal case against him for abduction and rape. Through the interference of influential men, a settlement was made wherein Rodrigo Pontas must

160

marry the beneficiary provided the criminal case were set aside, the parents gave their consent and they were married on December 2, 1959 at Biliran, Leyte, Philippines. Four months after the marriage Rodrigo Pontas disappeared. A period of more than six years has passed without news of the whereabouts of Rodrigo Pontas and believing him to be dead, the beneficiary married the petitioner, after executing an affidavit in good faith. A child was born to the couple on October 6, 1966 at Angeles City, Philippines.

The marriage contract is an exhibit in the case and contains a notation that Advice required under article 62 of the Civil Code of the Philippines, has been complied with and the same is favorable. The file also contains the affidavit of the beneficiary executed on March 21, 1966 to reflect that the beneficiary was previously married to Rodrigo Pontas on September 23, 1958 at Biliran, Leyte, Philippines that on the date of their marriage beneficiary was only 15 years of age and that she was abducted by Rodrigo Pontas and her parents decided to file a criminal action against him and that through the aid of some influential persons, her parents consented to the marriage; that several months after the marriage, Rodrigo Pontas left the conjugal dwelling and was never heard of from December 1958 up to the time of the execution of the affidavit: that she did not know his present whereabouts although some said that he had died somewhere; that he has been absent for more than seven years and that she never saw him again from the time he left her in December 1958; that it was her aim to remarry an American, hence she was executing the affidavit to avail herself of the provisions of article 83 of the Civil Code of the Philippines in the case of absent spouses. The beneficiary's statement dated November 9, 1966 executed at the American Embassy, Manila, Philippines is to the effect that one month after her marriage to Rodrigo Pontas he left her and she does not know where he went or where he is now. She consulted an attorney who told her that she would have to execute an affidavit to establish that she had not seen her husband and told him that she had last seen her husband December 1959. The attorney prepared a typewritten affidavit which she signed on March 21, 1966 and she was not aware that the date of the disappearance of her husband had been changed from 1959 to 1958.

After the visa petition was denied by the District Director, the petitioner wrote a letter to the effect that the beneficiary went in search of her first husband and found him. An affidavit signed by Rodrigo Pontas and the beneficiary affirming their marriage in 1959 and separation after four months was made a part of the record. The affidavit went on to state that a year after the marriage Rodrigo looked for another girl who is now his common-law wife, named Encarnacion

161

Malinso, by whom he has two children; that Rodrigo Pontas abandoned the beneficiary for almost seven years without any communication; that Rodrigo Pontas is no longer interested in the marriage between him and the beneficiary; that the beneficiary is no longer interested in having Rodrigo be with her through life; that the parties have agreed that they are no longer interested in living together as husband and wife; that they further agree that no court action will be deemed necessary against either one.

Counsel refers to article 83 of the present Civil Code of the Philippines, Act 386, effective August 30, 1950 which provides:

Any marriage subsequently contracted by any person during the lifetime of the first spouse of such person with any person other than such spouse shall be illegal and void from its performance, unless:

(1) The first marriage was annulled or dissolved; or

(2) The first spouse had been absent for seven consecutive years at the time of the second marriage without the spouse present having news of the absentee being alive, or if the absentee, though he has been absent for less than seven years, is generally considered as dead and believed to be so by the spouse present at the time of contracting such subsequent marriage, or if the absentee is presumed dead according to article 390 and 391. The marriage so contracted shall be valid in any of the three cases until declared null and void by a competent court. (29a)

Counsel for the petitioner relies upon the provision of article 83 of the Philippine Civil Code relating to cases where the absentee has been absent for less than seven years and is generally considered as dead and believed to be so by the spouse at the time of contracting such subsequent marriage. He cites annotations to the Civil Code of the Philippines by Professor Edgardo L. Paras who defines as bigamous and voidable marriages contracted because the absent spouse was absent for less than seven years but generally considered as or believed to be dead by the present spouse; the second marriage is considered valid until it is annulled. It is not the first marriage that can be annulled, it is the second one. The second marriage was allowed only because the first marriage in the meantime is presumed dissolved, at least in the eyes of the law. The mere returning of the first spouse is not a fact recognized under law; what should be done is to have the second marriage annulled. Until this is done, it is as if the first marriage does not exist; therefore all the effects of the first marriage, including the conjugal partnership of gains, should be deemed suspended. Indeed, whenever a second marriage has been performed in accordance with the forms of the law, there is a presumption that there were no legal impediments thereto. The first marriage is presumed to have been legally dissolved and the burden of proving that

such marriage still exists rests on the party who seeks to question the subsequent marriage.

Information was sought from the Law Library of Congress regarding the validity of the marriage herein. In a communication dated February 10, 1967, the Library of Congress affirmed the correctness of the citations of Professor Paras, both in his 1963 and 1965 editions, stating that the author in both books limits his discussion to cases decided by the Philippine Supreme Court involving marriages contracted by "present spouse" seven or more years after the "absent spouse" was last heard from, whereas the instant case involves an absence of less than seven years; and as far as can be ascertained, there is no existing case law in point. The Library of Congress then quotes from Professor Arturo M. Tolentino in his work entitled *Commentaries and Jurisprudence on the Civil Code of the Philippines* (vol. 1, 1960 ed., Manila, pp. 249-250), who appears to differ with Professor Paras that in article 83, good faith is the controlling factor and that the first marriage is presumed dissolved by the second. With respect to good faith, the author states that if the case does not fall under paragraph (2), the good faith of the spouse who has remarried will not validate the second marriage, and where the absent husband has been away for five years, but there are no circumstances from which he can be generally considered dead, and the wife, sincerely believing that he is dead, remarries, the second marriage would be void, notwithstanding her good faith.

On the question of the effect of a second marriage on the first, Professor Tolentino points out that the law admittedly gives a legal effect to the second marriage as between the parties to it, until it is annulled. In view of this, it is submitted that although the first marriage subsists, all its effects with respect to the personal and property relations of the parties must be deemed suspended. Professor Tolentino further points out that the provisions of article 83 are of American origin, and must be construed in the light of American jurisprudence. An identical provision (except for the period of absence) exists in the California Civil Code, section 61; California jurisprudence should, therefore, prove enlightening.

In the Civil Code of the Philippines (1950), the authors, Garcia and Alba, in their commentaries to article 83, state that generally speaking the marriages described in article 83(2) are called illegal marriages. Until declared null and void by a competent court, such marriages are considered valid in the meanwhile. It is because their voidability or nonvoidability depends on the happening of a certain event or the nonhappening of the same. Authors, Garcia and Alba,

163

likewise cite the similarity between article 83(2) and article 1, paragraph 61 of the Civil Code of California.

Accordingly, the Civil Code of California was examined. Section 61 of the Civil Code of California provides in pertinent part that a subsequent marriage contracted by any person during the life of a former husband or wife of such person, with any person other than first husband or wife, is illegal and void from the beginning, unless such former husband or wife is absent, and not known to such person to be living for the space of five consecutive years immediately preceding such subsequent marriage, or is generally reputed or believed by such person to be dead at the time such marriage was contracted. In either case, the subsequent marriage is valid until its nullity is adjudged by a competent tribunal. The rule enunciated from the California cases and authorities is that a presumption arises from proof of the solemnization of a second marriage that it is legal and that a former marriage has been dissolved, but this is not a conclusive presumption and may be controverted by evidence that a former spouse is living and that neither a divorce nor an annullment of the former marriage was ever procured; the California Courts have read into the statute the requirement that if the former husband or wife proves to be alive, and the former marriage has not been dissolved or annulled, the person seeking the benefit of the presumption must establish that when he entered into the new marriage he believed honestly and in good faith that his first spouse was dead.[1] The California courts have held that when a person has entered into two successive marriages, a presumption arises in favor of the validity of the second marriage and the burden is upon the party attacking the marriage to prove that the first marriage had not been dissolved by death of the first spouse or by divorce or had not been annulled at the time of the second marriage.[2]

In the instant case the reliance is had upon that portion of article 83(2) of the Philippine Civil Code which relates to an absence for less than seven years but the absentee is generally reputed as dead and believed to be so by the present spouse at the time of the contracting of the subsequent marriage. In this case, the absentee was unheard of for six years and believed to be dead by the present spouse. The absentee first spouse has executed an affidavit to the effect that he abandoned the beneficiary for almost seven years without any communication between them; that since a year after their marriage in

---

[1] *Matter of S——*, 7 I. & N. Dec. 469, 472.

[2] *Hamrick v. Hamrick*, 260 P. 2d 189, 119 C.A.2d 972 (1953); *Gainey v. Gainey*, 259 P.2d 984, 119 C.A.2d 564 (1953); *Mazzenga v. Rosso*, 197 P.2d 770, 87 C.A.2d 790 (1948); *In re Newman's Estate*, 94 P.2d 356, 34 C.A.2d 706 (1939).

1959 he took a "common-law" wife by whom he has two children; and that he is not interested in resuming his former marriage relationship with the beneficiary who is now married to a citizen serviceman by whom she has a child. Under the Philippine Civil Code, article 83(2) the second marriage shall be valid until declared null and void by a competent court. The marriage has never been annulled and the first spouse has expressed no interest in obtaining an annulment. Under the Philippine court decisions and authorities the law admittedly gives legal effect to the second marriage as between the parties who entered into it until it is annulled.[3] The comparable California legislation is to the same effect. It is concluded that the petitioner has borne the burden of establishing a valid marriage to the beneficiary.[4] The visa petition will be approved.

ORDER: It is ordered that the visa petition be approved for immediate relative status on behalf of the beneficiary.

---

[3] *Sy Joo Lieng* v. *Sy Quia*, 16 Phil. 137, affd. in 228 U.S. 335.

[4] Cf. *Matter of Peralta*, 10 I. & N. Dec. 48, in which there was an absence of more than seven years.