[S. F. No. 15173.   In Bank.—January 30, 1936.]

JOSEPH FEIG, Respondent, v. BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION et al., Appellants.

Leo R. Freidman and James J. Harrington for Appellants.

Reisner & Deming for Respondent.

THOMPSON, J.—This cause was transferred to this court for hearing after decision by the District Court of Appeal in order that we might give further consideration to the question of whether the plaintiff is entitled to all or only one-half of the property involved. No question was entertained concerning the correctness of the disposition of other points by

the District Court, for which reason we adopt that portion of the opinion, written by Mr. Justice Sturtevant, as follows:

"As the surviving husband the plaintiff commenced an action against the defendants to impress a trust on certain real and personal property standing in the name of his wife on the date of her death. On the trial he was nonsuited. An appeal was taken and the judgment was reversed. (*Feig* v. *Bank of Italy etc. Assn.*, 218 Cal. 54 [21 Pac. (2d) 421].) The facts presented by that record are quite fully stated in that decision and need not be repeated. After the *remittitur* went down other proceedings were had which resulted in a judgment in favor of the plaintiff impressing a trust on all of the property. On the second trial additional evidence was introduced and the particular facts before the court will be referred to as occasion requires. From the judgment entered in favor of the plaintiff the defendants have appealed.

"At this time the defendants make two major points. In the first one they contend that the plaintiff was not entitled to anything. In the second point they contend that the trial court in determining the amount of the plaintiff's interest in the property committed prejudicial error in awarding him anything in excess of fifty per cent thereof.

"In contending that the plaintiff was not entitled to anything the defendants attack several specific items of evidence.

"In *Feig* v. *Bank of Italy etc. Assn., supra,* at page 58, the court said: 'If, as plaintiff contends and his evidence tends to show, *he continuously lived with the decedent* from the date of their marriage in 1889 until the decedent's death in 1929 in absolute ignorance of the existence of the divorce proceeding and the decree therein entered, and innocently and in good faith believed himself at all times to be the lawful husband of the decedent, he is entitled to an equitable apportionment of the gains made by their joint efforts.' (Italics ours.) The defendants stress the language which we have italicized and assert that the doctrine of the cases cited is such as to make it a condition precedent that the plaintiff should have pleaded and proved that the parties continuously lived together as man and wife. They then assert that the evidence shows at times Mrs. Feig was absent in Washington and at other times she was absent in Arizona. The record

does not show that these trips were not mere visits and there is certainly nothing to show any period of wilful desertion on the part of either of the parties. The point may not be sustained.

■ "As recited by the court in *Feig* v. *Bank of Italy etc. Assn., supra,* it was the contention of the defendants that Mr. and Mrs. Feig were married in 1889; that they were divorced in 1890; that the records of that proceeding were burned in 1906; that the records were restored March 23, 1912; and that the parties were a divorced couple from 1890 to 1921, at which time it is conceded they remarried. It is also a conceded fact that the properties in dispute were accumulated during said period. In this connection the defendants contend that by virtue of the divorce proceeding the plaintiff was wholly concluded. They contend that by virtue of the recitals of the judgment in the divorce proceeding it is conclusively proved in this collateral proceeding that the plaintiff was served with summons. He stoutly denies he was served with a summons but concedes the point of law that he is concluded by the recital. However, he contends there is no presumption that every divorce action is conducted to a final decree nor that the final decree is in favor of the plaintiff. And taking another step he vigorously contends that he never knew he had been divorced until his wife suggested, in 1921, that they remarry. While it may appear that the evidence is strange and out of the ordinary, the weight thereof was addressed to the trial court. Furthermore, in this connection it may be properly remarked that the plaintiff sustained his case and corroborated his testimony by the relatives and intimate friends of both parties. Not even a brother of the decedent knew of the divorce until long after the parties had been remarried.

■ "In claiming that the real estate was the separate property of the decedent the defendants call to our attention that on April 24, 1905, the plaintiff executed a deed of gift to the decedent and on March 18, 1912, he executed and delivered a quitclaim deed. Thereupon the defendants assert that the plaintiff will not be heard to claim that he did not give to the decedent his interest in the real estate. The point is not a new one. In *Jackson* v. *Jackson,* 94 Cal. 446 [29 Pac. 957], a set of facts closely similar was involved. Mr. Jack-

son executed to his wife a deed of gift. Shortly thereafter, for the purpose of correcting that deed, he executed to her another deed of gift, however, under the proof it was held that such facts were addressed to the trier of the facts and not to a court of review.

■ "As will be noted in the decision *Feig* v. *Bank of Italy etc. Assn., supra,* it was claimed by the plaintiff that he and the decedent intermarried in 1889; that from that date it was agreed the decedent should be the business head of the family and should handle all properties acquired; and that it was further agreed to place all properties in the name of the decedent in order to carry out said plan. In that connection it was further agreed that the husband and wife should recognize such properties as the accumulation of their joint efforts and in which each should have an equal interest. In the great fire of 1906 the records of title in San Francisco were destroyed. The decedent was advised that she should commence a proceeding to establish the title of record to said property. (Stats. 1906, Extra Sessions, p. 78.) She informed the plaintiff and he directed her to proceed. Nothing was said by either to the effect that the decree to be obtained was to have the effect of dissolving the trust theretofore established. Thereafter a decree known to the bench and bar as a McEnerney decree was obtained in favor of the decedent. Because it did not specially protect the rights of this plaintiff the defendants contend he is barred by that decree. The point may not be sustained. (*Bradley Co.* v. *Bradley,* 165 Cal. 237 [131 Pac. 750].) The only difference between the instant case and the case cited is in the relation of the date of the trust agreement to the date of the McEnerney decree. In the instant case the trust agreement was made over twenty years prior to the McEnerney decree and in the Bradley case it was made only a few months before the McEnerney decree.

■ "Shortly prior to the death of Mrs. Feig it was found necessary to commence guardianship proceedings. The plaintiff filed the petition. Therein, in attempting to specify her properties he named many, if not all, of the items involved in this litigation. The defendants contend that said statement was so inconsistent with the contention now made by the plaintiff as to be determinative. Counsel for the plaintiff freely concede that the contents of said petition constituted

an admission as against interest but they assert that such admission merely raised a conflict in the evidence and that the conflict was addressed to the trial court and not for the consideration of this court. The contention is clearly correct.''

It being manifest that the properties standing in the name of Mrs. Feig at the time of her death were not held by her as her separate property, but rather in trust, we are brought to the point where we must determine whether the plaintiff is entitled to the whole thereof as found and decreed by the trial court or whether he is entitled to only a portion thereof. In this connection it is urged by the appellants that only a portion may be awarded to the plaintiff because the law of the case has been established to that effect by the prior decision of this court, to which reference has been made above. Concretely, they argue that the statement that if the facts were as contended by the plaintiff, ''he is entitled to an equitable apportionment of the gains made by their joint efforts'' sets at rest the contention of the plaintiff that he is entitled to the whole. We do not understand the opinion to so conclude. Later on the decision declares: ''As above indicated, plaintiff was entitled to meet that defense, and, upon amendment of the complaint, to receive such relief, either legal or equitable, as the evidence warrants.'' Bearing in mind that the former appeal was from a judgment of nonsuit, and considering the opinion as a whole it is patent we held no more therein than that if the plaintiff's contentions were in fact true he was entitled to some relief, which should be measured by the trial court in accordance with the allegations of the amendments and the facts adduced.

As already indicated, the facts proved and the trial court found that the properties involved were all acquired during the period when the parties were not legally man and wife. It was also found that the funds were furnished by the plaintiff for the purchase of the property and the establishment of the bank deposits. In a general specification, and along with six others, appellants assert that the finding just mentioned is not supported by the evidence. They do not, however, set forth or give a *résumé* of the testimony to establish that the finding is contrary thereto. Assuming only that a question of its sufficiency is raised, it is an answer to call

attention to the fact that the record discloses that the plaintiff regularly turned over his wages to Mrs. Feig for use and investment and that the record does not show that she put any of her own money into any property or bank.

We are thus brought to the point where we may consider appellant's argument to the effect that the respondent may have no greater interest in the property by reason of the death of Mrs. Feig than he had during her lifetime, and that, in equity, only one-half thereof should be awarded him, citing as authoritative such cases as *Coats* v. *Coats,* 160 Cal. 671 [118 Pac. 441, 36 L. R. A. (N. S.) 844], *Schneider* v. *Schneider,* 183 Cal. 335 [191 Pac. 533, 11 A. L. R. 1386], *Jackson* v. *Jackson,* 94 Cal. 446 [29 Pac. 957], and *Figoni* v. *Figoni,* 211 Cal. 354 [295 Pac. 339]. These decisions are not, in our opinion, controlling. They proceed upon the theory that, in an action to set aside a void marriage where the parties have lived together under such void marriage and acquired property by their joint efforts, a court of equity may by analogy apply the rules which would obtain with regard to community property, in the absence of fraud or intervening rights of a third party, and divide the property between them. Such is not the instant case. Here by the fraud and concealment of Mrs. Feig plaintiff was led to live with her as her husband although they were not man and wife. He was induced to agree and did furnish her with funds to acquire property for them as though they were husband and wife and, so far as he was concerned, under the belief and understanding that when acquired it would be their community property. Hence, under the plainest principles of equity, it should be held that the trust property, although not community by reason of the fact that there was in truth no marriage, should be marked by all the incidents of community property. Whether we view the situation as one where the intent and agreement of the parties, presumed by law, should govern, or whether we view it as one where it is necessary to prevent the consummation of fraud, the ends of justice require that the property should be declared to be held in trust subject to all the incidents which ordinarily accompany community property. It is conceded, as it must be, by appellants that the entire community property, acquired prior to 1923, belongs to the surviving husband upon the death of the wife. Therefore, since all of the

property herein involved was acquired prior to that time, the whole thereof should go to the respondent, as adjudged by the trial court.

The judgment is affirmed.

Seawell, J., Shenk, J., Curtis, J., Conrey, J., and Waste, C. J., concurred.

Rehearing denied.