[L.A. No. 31858. Nov. 8, 1984.]

Estate of FAY REAH LESLIE, Deceased.
ALTON B. SMITH, Petitioner and Respondent, v.
WILLIAM GARVIN, Petitioner and Appellant.

188

**COUNSEL**

A. Merle Sessions for Petitioner and Appellant.

Darcy A. Skaggs for Petitioner and Respondent.

Opinion

BIRD, C. J.—Is a surviving putative spouse entitled to succeed to a share of his or her decedent's separate property under the Probate Code?

I.

On April 22, 1972, William Garvin and Fay Reah Leslie were married in Tijuana, Mexico. The marriage was invalid because it was never recorded as required by Mexican law.[1] However, Garvin believed that he and Leslie were validly married. The couple lived together as husband and wife for almost nine years, until Leslie's death in 1981. Throughout this period, they resided in a house in Mira Loma. The house had been purchased by Leslie, Mike Bosnich, her former husband, and respondent Alton B. Smith, a son from a prior marriage who lived next door. This case concerns the administration and distribution of Leslie's estate.

During Leslie's and Garvin's marriage, restaurant property, which had been acquired by Leslie prior to the marriage, was remodeled. As a result, it increased in value. There is conflicting testimony concerning the source of funds and labor used for this remodeling. Garvin testified that the improvements were paid for with "community funds" and that he and Leslie did most of the remodeling. Smith testified that (1) the money used to remodel the restaurant came from his mother's separate funds, (2) he and his brother performed most of the work, and (3) Garvin's work on the remodeling was minimal. After the improvements were made, Leslie sold the restaurant and received a promissory note secured by a deed of trust in her name.

During the marriage, Leslie and Garvin acquired three parcels of real property in the Desert Hot Springs area. The manner in which title was taken varied for each parcel. The first two parcels were purchased in 1977. Title to Parcel 1 was taken in joint tenancy by "Fay Bosnich, an unmarried woman, and William A. Garvin, an unmarried man." Title to Parcel 2 was taken in the name of "Fay Bosnich, an unmarried woman." Parcel 3 was purchased approximately 16 months later, and title to it was taken as a tenancy in common by "Fay Bosnich, an unmarried woman, and William Garvin, a widower."[2]

---

[1] Civil Code section 4104 provides that "[a]ll marriages contracted without this state, which would be valid by the laws of the jurisdiction in which the same were contracted, are valid in this state."

Since the marriage was not valid under Mexican law, it was not valid in California. At trial, Garvin's attorney conceded that he could not prove the validity of the marriage because it had never been recorded.

[2] Garvin had apparently been widowed once before.

Garvin and Leslie also purchased furniture during their marriage. There is conflicting testimony regarding which pieces of furniture they acquired together. Smith testified that with the exception of two end tables purchased by his mother and Garvin, the furniture in the Mira Loma residence had been acquired either during the 15 years that Smith and his mother lived together or during his mother's former marriage. Garvin testified that he and Leslie together purchased 50 percent of the furniture in the residence.

During the marriage, a trustee bank account was established for Leslie's granddaughter, Deborah E. Hoskins, with Leslie named as trustee. Leslie deposited the payments she received from the sale of her restaurant property into this account. Garvin testified that $1,000 of "community funds" were also deposited into this account. He also testified that Leslie withdrew money from the account and placed that money into the couple's common funds.

On February 6, 1981, Leslie died intestate. She was survived by Garvin, her son Smith, and three other adult children from a prior marriage.

Smith filed a petition for letters of administration in the estate of his deceased mother. Garvin objected to Smith's petition, filed his own petition for letters of administration, and sought a determination as to who was entitled to distribution of the estate.

Smith requested to be appointed special administrator to take possession of the estate and to preserve it until an administrator could be appointed. (See Prob. Code, § 460.[3]) The superior court granted that request.

In January 1982, a court trial was held to determine the appointment of the administrator and the distribution of the property in the estate. ■ ■ ■ ■ The trial court found that a putative marriage had existed between Garvin and Leslie,[4] denied Garvin's petition for letters of administration, and determined that he was not entitled to any of decedent's separate property. The court also found that some of the property was quasi-marital[5] and some was separate.

---

[3]All statutory references are to the Probate Code unless otherwise noted.

[4]A putative marriage is one in which at least one of the parties to an invalid marriage has a good faith belief that the marriage is valid. (*Sanguinetti* v. *Sanguinetti* (1937) 9 Cal.2d 95, 99 [69 P.2d 845, 111 A.L.R. 342].)

Civil Code section 4452 sets forth the basis for finding a putative marriage. That section provides in relevant part that "[w]henever a determination is made that a marriage is void or voidable and the court finds that either party or both parties believed in good faith that the marriage was valid, the court shall declare such party or parties to have the status of a putative spouse . . . ."

Neither of the parties contests the trial court's finding of a putative marriage in this case.

[5]Quasi-marital property is property acquired during a putative marriage which would have been community property or quasi-community property had the marriage been valid. (See Civ. Code, § 4452; *Estate of Vargas* (1974) 36 Cal.App.3d 714, 717 [111 Cal.Rptr. 779, 81 A.L.R.3d 1].)

Specifically, the trial court found that three bank accounts, the two end tables, and approximately $2,400 in cash were quasi-marital property. The remaining property was found to be Leslie's separate property, consisting of: (1) Parcel 2, which was in decedent's name alone, (2) an undivided one-half interest in Parcel 3, which was in decedent's and Garvin's names and held as a tenancy in common, (3) the remaining furniture in the Mira Loma residence, (4) a two-thirds interest in the Mira Loma residence, (5) the trustee bank account, and (6) the promissory note from the sale of the restaurant property. Finally, the trial court found that the funds used to improve the restaurant had come from decedent's separate property and the improvements had been made by decedent's sons.

Garvin makes several contentions on appeal. First, he argues that he is entitled to an intestate share of the decedent's separate property. Second, he contends that he should have been appointed administrator of the estate. Lastly, he challenges several of the trial court's separate property findings.

## II.

The principal issue presented by this case is whether a putative spouse is entitled to succeed to a share of his or her decedent's separate property.[6] Although this court has not directly confronted this question, the conclusions of other courts on this and analogous questions are instructive.

Some guidance can be gleaned from decisions which have held that a putative spouse is entitled to succeed to *quasi-marital* property. (See *ante,* fn. 5.) One such decision is *Feig* v. *Bank of America etc. Assn.* (1936) 5 Cal.2d 266 [54 P.2d 3]. The Feigs were married in 1889. A year later, Mrs. Feig obtained a divorce without Mr. Feig's knowledge. The couple

---

[6] Sections 221, 223 and 224 set forth the rights of a "surviving spouse" to the separate property of an intestate decedent.

Section 221 provides: "If the decedent leaves a surviving spouse, and only one child or the lawful issue of a deceased child, the estate goes one-half to the surviving spouse and one-half to the child or issue. If the decedent leaves a surviving spouse, and more than one child living or one child living and the lawful issue of one or more deceased children, the estate goes one-third to the surviving spouse and the remainder in equal shares to his children and to the lawful issue of any deceased child, by right of representation; but if there is no child of decedent living at his death, the remainder goes to all of his lineal descendants; and if all of the descendants are in the same degree of kindred to the decedent they share equally, otherwise they take by right of representation."

Section 223 provides: "If the decedent leaves a surviving spouse and no issue, the estate goes one-half to the surviving spouse and one-half to the decedent's parents in equal shares, or if either is dead to the survivor, or if both are dead to their issue and the issue of either of them, by right of representation."

Section 224 provides: "If the decedent leaves a surviving spouse and neither issue, parent, brother, sister, nor descendant of a deceased brother or sister, the whole estate goes to the surviving spouse."

continued living together as husband and wife. In 1921, Mrs. Feig suggested that she and Mr. Feig remarry. It was only then that Mr. Feig discovered that he and Mrs. Feig were divorced. They remarried that year. In 1929, Mrs. Feig died intestate. (*Id.*, at p. 270.)

At issue in *Feig* was the property acquired after the 1890 divorce and before the 1921 remarriage. The trial court awarded all the property to Mr. Feig. This court, affirming the judgment, noted that the property acquired by the Feigs during the period they were divorced, "although not community by reason of the fact that there was in truth no marriage, should be marked by all the incidents of community property." (5 Cal.2d at p. 273.) Thus, Mr. Feig was entitled to all of the "community" property. (*Id.*, at pp. 273-274.)

Although the surviving husband in *Feig* was the legal spouse at the time of his wife's death, he was also the putative spouse for the period during which the couple were divorced. Thus, *Feig* essentially holds that a surviving putative spouse *is* entitled to all the property acquired during the putative marriage.

This holding was made explicit several years later in *Estate of Krone* (1948) 83 Cal.App.2d 766 [189 P.2d 741]. There, the decedent was survived by his putative wife and three children from a previous marriage. The trial court determined that the putative wife was entitled to only one-half of the "community" estate. (*Id.*, at pp. 766-767.) The Court of Appeal modified the judgment to award all of the "community" estate to the putative wife. (*Id.*, at p. 770.) The court held that when a putative spouse dies, the surviving spouse takes "the same share to which she would have been entitled as a legal spouse." (*Id.*, at p. 769.)

The *Krone* court reasoned that "the logic appears irrefutable that if according to statute [§ 201[7]] the survivor of a valid, ceremonial marriage shall be entitled to take all of the community estate upon its dissolution, then by parity of reasoning why should not the [putative] wife inherit the entire estate of a putative union upon the death of her husband intestate? Clearly, she does inherit all." (83 Cal.App.2d at pp. 769-770; accord *Union Bank & Trust Co.* v. *Gordon* (1953) 116 Cal.App.2d 681, 689-690 [254 P.2d 644]; *Mazzenga* v. *Rosso* (1948) 87 Cal.App.2d 790, 793-794 [197 P.2d 770].) It would be contrary to established law to deny a putative spouse

---

[7]Section 201 sets forth the rights of a "surviving spouse" to the community property. That section provides in relevant part: "Upon the death of either husband or wife, one-half of the community property belongs to the surviving spouse; the other half is subject to the testamentary disposition of the decedent, and in the absence thereof goes to the surviving spouse . . . ."

"her rights as a surviving spouse to inherit the total of the gains of the putative marriage." (83 Cal.App.2d at p. 770.)

*Krone* has been read "to recognize a putative [spouse] as a legal spouse for the purpose of succession." (*Kunakoff* v. *Woods* (1958) 166 Cal.App.2d 59, 65-66 [332 P.2d 773].) That reading is clearly applicable to the determination of the separate property rights of a putative spouse.

A number of Court of Appeal decisions support the conclusion that a putative spouse is entitled to succeed to a share of the decedent's separate property. *Estate of Goldberg* (1962) 203 Cal.App.2d 402 [21 Cal.Rptr. 626] is one such case. Sam Goldberg died intestate, survived by Edith, his putative spouse, and three children from a prior marriage. The trial court found that Edith was both Sam's actual and putative spouse. She was awarded all of the community property as well as one-third of Sam's separate property. The other two-thirds of the separate property was awarded to Sam's children. (*Id.*, at p. 404; see § 221, *ante*, fn. 6.) The children appealed.

The Court of Appeal agreed with the trial court's finding that there was insufficient evidence that Edith was Sam's actual wife, but sufficient evidence that she was Sam's putative wife. (203 Cal.App.2d at pp. 411-412.) As a putative spouse, Edith was entitled "to the same share of the 'community' property as she would receive as an actual wife." (*Id.*, at p. 412.)

Although the *Goldberg* court was silent on the question of Edith's right as a putative spouse to succeed to Sam's *separate* property, the court did affirm the trial court's award of one-third of that property to Edith. By such action, the Court of Appeal implicitly recognized the right of a surviving putative spouse to an intestate share of the decedent's separate property.

Similarly in *Garrado* v. *Collins* (1955) 136 Cal.App.2d 323 [288 Cal.Rptr. 620], the trial court awarded the putative husband one-third of the decedent's separate property. The decedent's two children from a previous marriage appealed, arguing that the putative husband was not entitled to any of the separate property. (*Id.*, at pp. 324-325.)

The Court of Appeal did not reach the merits of the trial court's award. Instead, it held that the children lacked standing as aggrieved parties and dismissed the appeal. (136 Cal.App.2d at pp. 325-326.) In dictum, the court noted that the children could not inherit the separate property at issue because that property would descend either to the legal husband, who was still living, or to the surviving putative husband. (*Ibid.*) That observation is significant, since the court recognized the possibility that the putative hus-

band may have been awarded the "surviving spouse's" share of the separate property even as against the legal husband.

Finally, there is *Estate of Shank* (1957) 154 Cal.App.2d 808 [316 P.2d 710]. Claire Shank married her legal husband in 1944, then obtained a Mexican divorce, and subsequently married her putative husband. In 1953, she died intestate, leaving an estate consisting entirely of separate property. She was survived by a putative husband, a legal husband, and three adult siblings. (*Id.*, at pp. 809-810.)

The trial court found that the Mexican divorce was invalid and awarded all the separate property to the siblings.[8] The court also found that the legal husband had acquiesced in and relied upon the Mexican divorce and had conducted himself as if that decree were valid. He was, therefore, estopped from asserting that he was the surviving spouse for the purpose of inheriting the decedent's separate property. In addition, the trial court found that the decedent's marriage to her putative husband was invalid because she was still married to her legal husband at the time of the second "marriage." (154 Cal.App.2d at pp. 810-811.) Both the legal and putative husbands appealed. (*Id.*, at p. 811.)

The Court of Appeal affirmed the award as to the legal husband, concluding that as against the putative husband, the former was estopped from contending that the divorce was invalid. (154 Cal.App.2d at pp. 811-812.) However, the court concluded that the putative husband was entitled to one-half of the separate property.[9] Since the decedent was estopped from denying the validity of the Mexican divorce during her life as against the putative husband, her heirs, in privity with her, were also estopped. The court noted that a second marriage is presumed to be valid. (*Id.*, at p. 812.) Although the result in *Shank* rests on estoppel principles, it provides yet another example of a putative spouse who was permitted to succeed to a share of the decedent's separate property.

In many analogous contexts, California courts, as well as federal courts applying California law, have accorded surviving putative spouses the same rights as surviving legal spouses. Examples abound.

In *Kunakoff* v. *Woods, supra,* 166 Cal.App.2d 59, 67-68, a surviving putative spouse was held to be an heir for the purposes of Code of Civil

---

[8]Under section 225, in the absence of a surviving spouse, issue and parents, a decedent's brothers and sisters inherit the entire estate.

[9]Under section 223, siblings are entitled to one-half of the decedent's separate estate if the decedent leaves a surviving spouse and no issue or parents. (See *ante,* fn. 6.)

Procedure section 377. As such, she was entitled to bring an action for the wrongful death of her deceased partner. The Court of Appeal noted that the term "spouse" may include a putative spouse. (*Kunakoff* v. *Woods, supra,* 166 Cal.App.2d at p. 63.) The court reasoned that since a putative spouse is an heir for purposes of succession, she is an heir for purposes of maintaining an action for wrongful death. (*Id.,* at pp. 67-68.)[10]

A surviving putative spouse has also been held to be a surviving spouse within the meaning of Government Code section 21364. (*Adduddell* v. *Board of Administration, supra,* 8 Cal.App.3d 243.) That statute entitles a surviving spouse to special death benefits under the Public Employees' Retirement Law. In *Adduddell,* the court indicated that it would be "illogical and inconsistent" for the Legislature to intend that a putative spouse is a surviving spouse under section 201, but not a surviving spouse under Government Code section 21364. (8 Cal.App.3d at pp. 249-250.)

A surviving putative spouse has also been held to be a "surviving widow" within the meaning of a former version of Labor Code section 4702 (Stats. 1969, ch. 65, § 1, p. 187), and thus entitled to recovery of workers' compensation death benefits. (*Brennfleck* v. *Workmen's Comp. App. Bd., supra,* 3 Cal.App.3d 666; see also *Neureither* v. *Workmen's Comp. App. Bd.* (1971) 15 Cal.App.3d 429, 433 [93 Cal.Rptr. 162].)

Finally, it is noteworthy that putative spouses have been awarded spousal benefits under the civil service retirement statute (5 U.S.C. § 8341, *Brown* v. *Devine* (N.D.Cal. 1983) 574 F.Supp. 790, 792), under the Longshoremen's and Harbor Workers' Compensation Act (33 U.S.C. § 901 et seq., *Powell* v. *Rogers* (9th Cir. 1974) 496 F.2d 1248, 1250, cert. den., 419 U.S. 1032 [42 L.Ed.2d 307, 95 S.Ct. 514]; *Holland America Insurance Company* v. *Rogers* (N.D.Cal. 1970) 313 F.Supp. 314, 317-318), and under the Social Security Act (42 U.S.C. § 416, *Aubrey* v. *Folsom* (N.D.Cal. 1957) 151 F.Supp. 836, 840; *Speedling* v. *Hobby* (N.D.Cal. 1955) 132 F.Supp. 833, 836).

---

[10]In 1975, the Legislature, presumably aware of *Kunakoff,* amended Code of Civil Procedure section 377 to provide that putative spouses are "heirs" for purposes of maintaining a wrongful death action only "if they were dependent on the decedent." (See Stats. 1975, ch. 334, § 1, p. 784.)

Respondent relies on this amendment for the proposition that a putative spouse should not be accorded the rights of a legal spouse in the absence of a specific legislative extension of such rights. His argument is unpersuasive.

This argument ignores decisions such as *Estate of Krone, supra,* 83 Cal.App.2d 766, in which the court granted a putative spouse the rights of a surviving spouse by interpreting a statute which referred only to the latter. (See also *Adduddell* v. *Board of Administration* (1970) 8 Cal.App.3d 243 [87 Cal.Rptr. 268]; *Brennfleck* v. *Workmen's Comp. App. Bd.* (1970) 3 Cal.App.3d 666 [84 Cal.Rptr. 50].) Since legislative silence was obviously no bar to extending significant rights to putative spouses in these cases, it should not be so here.

■ The foregoing authority compels but one conclusion: a surviving putative spouse is entitled to succeed to a share of his or her decedent's separate property.[11] This result is inherently fair. By definition, a putative marriage is a union in which at least one partner believes in good faith that a valid marriage exists. As in this case, the couple conducts themselves as husband and wife throughout the period of their union. Why should the right to separate property accorded to legal spouses be denied to putative spouses?

Further, to deny a putative spouse the status of surviving spouse for the purposes of succeeding to a share of the decedent's separate property would lead to anomalous and unjust results. For example, where the decedent is survived by a putative spouse and children of the putative marriage, such a rule would deny the spouse succession rights to separate property even though the children are accorded such rights.[12] Such a rule would also deny succession rights to a putative spouse who lived with the decedent for many years, while according these rights to the legal spouse, even if that spouse's partner died the day the couple were married. (Laughran & Laughran, *Property and Inheritance Rights of Putative Spouses in California: Selected Problems and Suggested Solutions* (1977) 11 Loyola L.A. L.Rev. 45, 68.) Surely, the Legislature never intended such results.

There is one Court of Appeal decision which has reached a conclusion contrary to that reached by this court today. That decision must therefore be addressed. In *Estate of Levie* (1975) 50 Cal.App.3d 572 [123 Cal.Rptr. 445, 82 A.L.R.3d 1234], the trial court awarded the putative spouse all of the quasi-marital property as well as an intestate share of the decedent's separate property. (*Id.,* at p. 574.) One of the decedent's children from a prior marriage appealed. The Court of Appeal reversed the separate property determination, rejecting the argument that a putative spouse is entitled to a surviving spouse's share of the decedent's separate property. (*Id.,* at pp. 576-577.)

The *Levie* court articulated three reasons in support of its holding. First, it noted that there appeared to be no California decision suggesting that a putative spouse is entitled to succeed to an interest in the decedent's separate property. Second, it declared that the equities connected with quasi-marital property do not apply to a decedent's separate property because the joint efforts of the putative spouses did not contribute to the acquisition of that

---

[11]There may be cases in which two or more surviving spouses each claim an intestate share of the decedent's separate property. However, that scenario is not before this court and need not be resolved at this time.

[12]By statute, children of a putative marriage possess the right of intestate succession to the separate property of their deceased parents. (See § 255; Civ. Code, § 7002.)

property. Lastly, the court observed that to give the putative spouse an interest in a decedent's separate property would "unjustifiably disregard the statutory scheme governing intestate succession of separate property." (50 Cal.App.3d at pp. 576-577.)[13]

*Levie* has been severely criticized by the commentators and for good reasons. (See, e.g., Laughran & Laughran, *op. cit. supra,* 11 Loyola L.A. L.Rev. at pp. 64, 66-68, 78, 85; Bruch, *The Definition and Division of Marital Property in California: Towards Parity and Simplicity* (1982) 33 Hastings L.J. 771, 825, fn. 224; Reppy, *Debt Collection from Married Californians: Problems Caused by Transmutations, Single-Spouse Management, and Invalid Marriage* (1981) 18 San Diego L.Rev. 143, 218, fn. 283.) Not only are the *Levie* court's reasons unpersuasive, but its conclusion leads to anomalous, absurd and unjust results.

*Levie*'s first reason is plainly in error. Numerous California decisions *have* suggested that a putative spouse is entitled to succeed to a share of a decedent's separate property. (See *ante,* at pp. 194-195.) For example, the result in *Estate of Krone, supra,* 83 Cal.App.2d 766 (*ante,* at pp. 193-194) suggests that a putative spouse should also be considered a surviving spouse for purposes of other sections in the same division of the Probate Code. Moreover, a surviving putative spouse has been accorded the same rights as a surviving legal spouse in many analogous contexts. (See *ante,* at pp. 195-196.) Clearly, *Levie*'s first reason is without basis in fact.

Equally unpersuasive are the other two reasons given in *Levie.* Two commentators have aptly addressed these reasons in their article concerning the rights of putative spouses. (See Laughran & Laughran, *op. cit. supra,* 11 Loyola L.A. L.Rev. at pp. 66-68.) As the Laughrans observe, "[w]hile it is true that the joint efforts. of putative spouses do not contribute to the acquisition of separate property, it is equally true that the efforts of a legally married person do not contribute to the acquisition of separate property of the other spouse. It therefore begs the question to state that the 'equities' of a putative spouse differ depending upon whether rights of succession to quasi-marital or separate property are at issue, since the same distinction applies to the 'equities' of a legally married person with respect to rights of succession to community and separate property. Thus, as to rights of intestate succession to separate property of the decedent, the 'equitable' position of a surviving legal spouse and a surviving putative spouse is the same." (*Id.,* at p. 67.)

---

[13]Respondent's position in this case is essentially a reiteration of the three reasons offered in *Levie.*

Further, language within the *Levie* opinion contradicts its ultimate conclusion. *Levie* stated that a putative spouse's right to succeed to quasi-marital property is derived from " '[e]quitable considerations arising from the reasonable expectation of the continuation of benefits attending the status of marriage entered into in good faith . . . .' [Citations.]'' (50 Cal.App.3d at p. 576.) As the Laughrans convincingly assert, "[t]hat very language dictates a decision in favor of the surviving putative spouse in cases involving succession to *separate* property, since the rights of a 'surviving spouse' [to succeed to separate property under the Probate Code] are 'benefits attending the status of marriage.' '' (Laughran & Laughran, *op. cit. supra,* 11 Loyola L.A. L.Rev. at p. 67, italics added.)

To accord a surviving putative spouse rights to the decedent's separate property honors rather than disregards the statutory scheme governing intestate succession. (Laughran & Laughran, *op. cit. supra,* 11 Loyola L.A. L.Rev. at p. 67; but see *Levie, supra,* 50 Cal.App.3d at p. 577.) Since the right to succession is not an inherent or natural right, but purely a creature of statute (*Estate of Simmons* (1966) 64 Cal.2d 217, 221 [49 Cal.Rptr. 369, 411 P.2d 97]), a surviving legal spouse inherits a decedent's separate property "only because the statutes provide that a person having the status of 'surviving spouse' takes a certain share." (Laughran & Laughran, *op. cit. supra,* 11 Loyola L.A. L.Rev. at p. 67.) To accord a surviving putative spouse the status of "surviving spouse" simply recognizes that a good faith belief in the marriage should put the putative spouse in the same position as a survivor of a legal marriage. (*Id.,* at p. 68.) Thus, contrary to *Levie,* to permit a surviving putative spouse to succeed to a share of the decedent's separate property in no way upsets the statutory scheme of intestate succession.[14]

*Levie* is "wrong in its analysis of the 'equities,' wrong as a matter of statutory construction, and . . . ignores compelling analogous precedents."

---

[14]This court's holding is in no way undermined by section 78 of the revised Probate Code which becomes effective January 1, 1985. (Stats. 1983, ch. 842, § 21.) That section provides: " 'Surviving spouse' does not include any of the following:

"(a) A person whose marriage to the decedent has been dissolved or annulled, unless, by virtue of a subsequent marriage, the person is married to the decedent at the time of death.

"(b) A person who obtains or consents to a final decree or judgment of dissolution of marriage from the decedent or a final decree or judgment of annulment of their marriage, which decree or judgment is not recognized as valid in this state, unless they (1) subsequently participate in a marriage ceremony purporting to marry each to the other or (2) subsequently live together as husband and wife.

"(c) A person who, following a decree or judgment of dissolution or annulment of marriage obtained by the decedent, participates in a marriage ceremony with a third person.

"(d) A person who was a party to a valid proceeding concluded by an order purporting to terminate all marital property rights."

Although that statute defines a surviving spouse by specifying the persons who are not surviving spouses, putative spouses are not among them. This legislative silence supports today's holding.

(Laughran & Laughran, *op. cit. supra,* 11 Loyola L.A. L.Rev. at p. 78.) Therefore, to the extent that it is inconsistent with this opinion, *Levie* is disapproved.

Here, the trial court determined that Garvin was not decedent's "surviving spouse" under section 221. As a result, the court determined that he had no legal interest in any of her separate property. That determination was in error.

## III.

Garvin next argues that under section 422 he should have been appointed the administrator of decedent's estate. This argument has merit.

Section 422 lists in order of priority the persons who are entitled to letters of administration. That section provides: "(a) Administration of the estate of a person dying intestate *must* be granted to one or more of the following persons, who are entitled to letters *in the following order*: [¶] (1) The surviving spouse, or some competent person whom he or she may request to have appointed. [¶] (2) The children. . . . [¶] (b) A relative of the decedent who is entitled to priority under subdivision (a) is entitled to priority only if either of the following facts exist: [¶] (1) The relative is entitled to succeed to all or part of the estate. . . ." (Italics added.)

■ The meaning of the statute is clear. "The surviving spouse, when entitled to succeed to the estate or some portion thereof, is given first preference. This right is absolute and the court has no right to refuse to appoint the survivor or to appoint another in a lower class." (*Estate of Hirschberg* (1964) 224 Cal.App.2d 449, 461 [36 Cal.Rptr. 661]; see also *Estate of Johnson* (1920) 182 Cal. 642, 643 [189 P. 280]; *Estate of Cummings* (1972) 23 Cal.App.3d 617, 622 [100 Cal.Rptr. 809]; *Estate of Locke* (1968) 258 Cal.App.2d 617, 622 [65 Cal.Rptr. 884].)

■ In addition, the reasoning in section II (*ante,* at pp. 192-200) compels the conclusion that a putative spouse is a surviving spouse within the meaning of section 422. Without reiterating those reasons here, suffice it to say that in the absence of clear legislative direction to the contrary, neither logic nor justice supports the conclusion that a putative spouse may inherit an intestate share of the decedent's separate property but may not administer the estate.

Here, the trial court denied Garvin's petition for letters of administration. As a putative husband, Garvin is a surviving spouse under section 422.

Therefore, he is entitled to letters of administration and has preference over anyone else. The trial court's ruling was in error.

## IV.

Next, Garvin contends that the trial court erred in finding that certain of the Desert Hot Springs property, the Mira Loma furniture, and the trustee bank account were decedent's separate property. He also contends that the trial court erred in failing to find a community interest in the improvements made to decedent's restaurant property. His argument is essentially that the trial court's determinations are unsupported by substantial evidence.

■ In reviewing the sufficiency of the evidence, this court is guided by well-settled principles. "[T]he power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted;" to support the trial court's findings. (*Crawford v. Southern Pacific Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183]; *Jessup Farms* v. *Baldwin* (1983) 33 Cal.3d 639, 660 [190 Cal.Rptr. 355, 660 P.2d 813].) "We must therefore view the evidence in the light most favorable to the prevailing party, giving [him] the benefit of every reasonable inference and resolving all conflicts in [his] favor . . . ." (*Ibid.*) ■ " 'The finding of a trial court that property is either separate or community in character is binding and conclusive on the appellate court if it is supported by sufficient evidence, or if it is based on conflicting evidence or upon evidence that is subject to different inferences . . . .' " (*Beam* v. *Bank of America* (1971) 6 Cal.3d 12, 25 [98 Cal.Rptr. 137, 490 P.2d 257].) With these familiar principles in mind, this court examines each of the challenged findings.

Three parcels of real property were purchased during the putative marriage. Although two parcels were purchased at the same time, title to each was taken in a different manner. Title to Parcel 1 was taken in Leslie's and Garvin's names as joint tenants,[15] while title to Parcel 2 was taken in Leslie's name alone. Sixteen months later, Garvin and Leslie purchased Parcel 3. Title to it was taken in both their names as tenants in common.

■ Garvin contests the trial court's findings that Parcel 2 and Leslie's one-half interest in Parcel 3 were her separate property. However, the record amply supports those findings.

The fact that title to each of the three parcels was taken in a different manner, particularly where all were purchased within a 16-month period, supports the inference that the parties deliberately intended to differentiate

---

[15]Parcel 1 is not at issue and will presumably pass to Garvin as the surviving joint tenant.

the ownership interests in each. Garvin's own testimony supports this inference. As he testified, a married couple "could put land or buy land in one name or another, whatever they wanted to. I mean, that was up to their own particular rights. [¶] Each of us knew how [title] got there and why. Of course, we never anticipated all these other problems at this point in time." Garvin was obviously sophisticated enough to understand the reasons for taking title to the properties in different ways. Thus, the trial court's findings that Parcel 2 and one-half of Parcel 3 were decedent's separate property were amply justified.

■ Garvin's contention that the trial court erred in finding that the bulk of Leslie's furniture was her separate property is also without merit.

Smith testified that with the exception of two end tables, all of the furniture in his mother's residence had been acquired prior to her marriage with Garvin. Although Garvin contradicted this testimony, the trial court resolved the conflict in Smith's favor. This court is bound by the trial court's finding, since it is based on substantial evidence. (*Jessup Farms* v. *Baldwin, supra,* 33 Cal.3d at p. 660.)

■ Alternatively, Garvin relies on the proposition that he should be awarded all the furniture as exempt property. (§ 660.) Since Garvin failed to make this argument below, he is precluded from raising it for the first time on appeal. (*Estate of Westerman* (1968) 68 Cal.2d 267, 279 [66 Cal.Rptr. 29, 437 P.2d 517].) In any event, it is well established that a trial court has discretion to deny a surviving spouse's request to set exempt property apart once an inventory has been filed. (§ 660; *Estate of Hawkins* (1956) 141 Cal.App.2d 391, 397-398 [296 P.2d 873].) There is no evidence that the trial court abused its discretion.

■ ■ ■ ■ Accordingly, the trial court's finding as to the furniture is affirmed.[16]

■ Garvin also contends that the trial court erred in finding that the trustee bank account consisted entirely of Leslie's separate property. Once again, Garvin's contention lacks merit.

---

[16]Garvin also asserts that he is entitled under section 660 to homestead rights in the Mira Loma residence during his lifetime. Ignoring the fact that this claim is also raised for the first time on appeal, it is settled that "establishment of a probate homestead [is] permissive rather than mandatory." (Cal. Law Revision Com. com. to § 660, 53 West's Ann. Prob. Code (1984 pocket pt.) p. 83, Deering's Ann. Prob. Code (1984 pocket supp.) p. 99.) Thus, had it considered the question, the trial court, in its discretion, could have denied Garvin homestead rights.

Garvin offered the only evidence regarding the trustee account. He testified that when the account was originally established, $1,000 of "community funds" were placed in it. He also testified that payments from the sale of Leslie's restaurant property were deposited into the account and that Leslie withdrew money and placed it into the couple's common funds. Moreover, Leslie was the sole trustee named on the account for her granddaughter. At the time of Leslie's death, there were $1,719 in the account.

In ruling on this matter, the trial court found that Garvin had no interest in the account. The trial court specifically indicated that it had taken the witnesses' credibility into consideration. Since that court was in a better position to weigh Garvin's credibility against evidence that the account appeared to be Leslie's separate property, this court discerns no error in the trial court's ruling.

 Lastly, Garvin asserts that funds and labor from the "community" were used to improve decedent's restaurant property and that the "community" is therefore entitled to a pro rata share of the increased value of that property. This assertion, too, fails.

It is undisputed that decedent acquired the restaurant prior to her marriage with Garvin. It is also uncontested that improvements were made to the restaurant that increased its value.

However, the testimony was in conflict regarding the source of funds and labor used for the improvements. Garvin testified that community funds were used and that he and Leslie did most of the work themselves. Smith testified that his mother's separate funds were used, that he and his brother did most of the work, and that any labor by Garvin was minimal.

The trial court resolved the conflict in Smith's favor. The finding that the restaurant property was decedent's separate property is thus binding on this court for it is supported by substantial evidence. (*Jessup Farms* v. *Baldwin, supra,* 33 Cal.3d at p. 660.)

## V.

Virtually every court which has considered the issue has accorded a surviving putative spouse the same rights as a surviving legal spouse. The one court which has decided against such benefits did so in a poorly reasoned and unsound decision. Moreover, as in most putative spouse cases, the couple involved here lived together for a substantial period of time, conducting themselves as husband and wife throughout their union. To deny one of their members an intestate share of the decedent's separate property while

permitting him to succeed to the quasi-marital property defies logic and leads to unjust results. Therefore, this court holds that a surviving putative spouse is entitled to succeed to a share of the decedent's separate property. Similar reasoning supports the conclusion that a surviving putative spouse is entitled to first preference for letters of administration.

Accordingly, the portion of the trial court's judgment denying Garvin an interest in decedent's separate property and letters of administration in decedent's estate is reversed. In all other respects, the judgment is affirmed.

Mosk, J., Kaus, J., Broussard, J., Reynoso, J., Grodin, J., and Lucas, J., concurred.